## WATTS v. JOHNSON AND OTHERS.

Where a petition alleges ownership generally in the plaintiffs, a title showing a special property in one of the plaintiffs and a general property in the others will support an action for the property, if no objection be made to its introduction.

Where a mortgagee asserts a claim of absolute ownership in the property mortgaged, it is not necessary for the mortgagor to tender the amount acknowledged to be due on the mortgage before commencing suit for the property.

Where the mortgagor sued the mortgagee for the mortgaged property, claiming damages for the detention of the property, and the mortgagor was permitted without objection to prove the value of the hire of the mortgaged property: *Held*, That it was competent for the jury to estimate the value of the hire and apply it to the extinguishment of the debt.

A defendant cannot set up the defense of an outstanding superior title in a third party by an instruction to the jury when he has not set up such defense in his answer.

To entitle a party to a new trial on the ground of newly-discovered evidence, he must satisfy the court, *first*, that the evidence has come to his knowledge since the trial; *second*, that it was not owing to the want of due diligence that it was not sooner obtained; and, *third*, that it would probably change the result upon a new trial. (Note 63.)

A want of recollection of a fact which, by due attention, might have been remembered, is not a ground for granting a new trial; nor is an inadvertent omission by a witness to state all he knows material to the case. (Note 64.)

Appeal from Harris. The appellees, children of Achilles E. C. Johnson and Margaret his wife, minors, by their guardian, jointly with the said Margaret, brought suit against the appellant to recover a negro woman of which they claimed the ownership. At the Spring Term, 1848, the defendant not having answered, judgment by default *nisi* was taken against him. Afterwards, at the same term, the defendant filed an affidavit, in which he alleged that he had a meritorious cause of action; that he was the rightful owner of the slave described in the plaintiff's petition by purchase, for a valuable consideration, from the plaintiff Margaret and one McGuire and one Lewis, who were in the lawful possession and ownership of the said slave. Upon this affidavit the judgment by default [312] was set aside, and the defendant filed as his answer a general denial.

At the Fall Term, 1848, the defendant filed an answer, alleging that on the 25th day of April, 1846, J. Lewis and Samuel McGuire and his wife Margaret, one of the plaintiffs, in consideration of the sum of $250 paid them by the defendant, executed to him a bill of sale, and at the same time delivered to him the possession of the negro; he, the defendant, executing to them in return a defeasance to the effect that if they should cause to be repaid to him the $250 on or before the 25th day of May, 1847, he would reconvey to them the negro; otherwise the bill of sale to become absolute. The defendant further answered that on the 14th day of May, 1847, before the said sum of money had been paid or tendered, one J. D. Groesbeck and A. M. Monroe, acting by and with the advice, consent, and special authority of the said Margaret, executed to him another bill of sale of said negro for the further consideration of $200 paid to said Groesbeck for the use of said Margaret, and that said sum of money had never been tendered to him.

The cause was tried at the Spring Term, 1849. The plaintiffs give in evidence a deed of gift, bearing date on the 18th day of October, 1841, made by Alison A. Lewis, conveying to the minor plaintiffs the slave in controversy, with others, and giving to their mother, the said Margaret, "the control and stewardship of said negroes separately from her husband during the minority of said children." It was in proof that the plaintiff Margaret, mother of the infant plaintiffs, and former wife of A. E. C. Johnson, is the sister of Alison A. Lewis, by whom the deed of gift under which the plaintiffs claim title was executed; that the negro in controversy, with others mentioned in the deed of gift, were in possession of the Johnson family, the plaintiffs, in 1841; that after the death of A. E. C. Johnson in 1844, his widow, Margaret, married

## Watts v. Johnson.

McGuire; that on the 25th day of April, 1846, she, together with [**313**] her then husband, McGuire, and one Burwell J. Lewis, executed to the defendant an absolute bill of sale of the negro in controversy as her separate property, purporting to be in consideration of $250; that this bill of sale was given to secure the payment of $150 or $200 loaned by the defendant to the plaintiff Margaret; that the negro woman was delivered to the defendant about the same time; that she is worth $550 or $600, and her hire about $10 per month.

There was some conflicting testimony respecting the former ownership of the negro woman in controversy; one witness testifying that previous to the deed of gift from Alison A. Lewis to the plaintiffs she belonged to said Lewis, and that his title was never doubted or litigated, and another testifying that she did not belong to either of the parties to the suit, but to the estate of one Webb, who died in the year 1832 or 1833, and from whose administrator the plaintiffs had obtained the possession of the property, but how he did not know. It was proved that the plaintiffs had been in possession of the negro several years previous to the making of the bill of sale to the defendant. The bill of sale under which the defendant claimed was given in evidence by him, and he introduced a witness, who testified that he wrote it at the instance of the defendant; that it was given in consideration of a loan of money, and was intended as a mortgage; that he was under the impression that he at the same time wrote a defeasance to be signed by the defendant.

The counsel for the defendant asked the court to instruct the jury—

1. "That if they believe from the evidence that any one of the plaintiffs have parted with their interest in the negro in controversy, they must find for the defendant.

2. "That if the negro in controversy was mortgaged to the defendant by any one of the plaintiffs, they must find for the [**314**] defendant, unless the mortgage money was tendered to the defendant before suit.

3. "That the plaintiffs must prove clearly that they are the legal owners of said negro and entitled to the possession thereof before they can recover in this action.

4. "That if the jury believe that the title or right of possession of said slave is in any other person than the plaintiffs or defendant, they must find for the defendant.

5. "That unless the jury believe that the plaintiffs tendered the money paid to Margaret and L. S. McGuire, mentioned in the bill of sale executed by Lewis and McGuire and wife, to the defendant before suit, they must find for the defendant.

6. "That if there be no evidence to show when T. M. Likens was appointed guardian, then the jury may as well infer that said appointment was made after the execution of the bill of sale to the defendant as before.

7. "That unless the jury believe from the evidence that the slave in question was the property and in the possession of A. A. Lewis on the 18th day of October, 1841, the plaintiffs cannot claim title under the conveyance from said Lewis to plaintiffs."

The court gave the third charge as asked, and refused the 1st, 2d, 4th, 5th, 6th, and 7th.

The jury found a verdict for the plaintiffs, estimating the value of the negro at $600.

The defendant thereupon moved for a new trial on two grounds:

1st. Newly-discovered evidence.

2d. Misdirection of the court in charging the jury "that they could estimate the hire of the negro and apply it to the liquidation of the mortgage debt."

In support of the first ground, the defendant offered the affidavit of a witness, the same who had been introduced by him upon the trial, stating that, "according to his best recollection, at the time W. G. Watts furnished to L. S. McGuire the money stated as the consideration of the conveyance

written by him, it was expressly understood and agreed between the parties that so long as the negro girl remained unredeemed, said Watts was to pay no hire for her services, and the money was to carry no interest."

The motion for a new trial was overruled. There was judgment for the plaintiffs for the negro or her value as found by the jury, and the defendant appealed.

*Webb*, for appellant.

I. Whatever right the Johnsons may have had to recover, Mrs. McGuire had none, and the first instruction asked by the defendant ought to have been given.

Regarding the conveyance as a mortgage, Mrs. McGuire had certainly a right to mortgage her term. She could only regain the possession by redemption. It was neither alleged nor proved that the money was paid or tendered. The children were not entitled to the possession until their arrival at majority, and therefore could not sue for and recover it.

II. The fourth instruction ought unquestionably to have been given. If the right to the negro or the right of possession was in any other person than the plaintiffs, they certainly had no right to recover, even though the defendant had no right.

III. As the plaintiffs claimed solely under the deed from Lewis, the seventh instruction asked was obviously proper, and ought to have been given.

IV. The verdict of the jury was evidently predicated upon the presumption that the hire of the negro was equivalent to the money advanced on the mortgage and the interest; and if so, the newly-discovered evidence was of great importance. The parties had a right to contract that the hire should stand off against the interest. (Smith *v.* Doak, 3 Tex. R., 215.)

*Gray*, for appellees. The first question asked was irrelevant. Besides, it is the duty of the court to make such a decree as will finally settle the rights of all the parties litigant, [**316**] without regard to their position on the record. (Story Eq. Pl., sec. 72, *et seq.*)

The second and fifth instructions were properly refused, because the defendant had precluded the necessity of proof of a tender by the claim of absolute ownership. (2 Caine's Err., 200; Luckett *v.* Townsend, 3 Tex. R., 119.)

The fourth instruction asked was irrelevant. There was no evidence of property in another. Besides, the defendant was estopped from denying the title of the plaintiffs.

I do not see the drift of the sixth instruction asked. If the right of the guardian was intended to be questioned, it ought to have been done by special plea. (1 Ch. Pl., 525; 2 Dallas R., 100; 3 Day R., 303.)

The seventh instruction asked clearly embraced too much. It was certainly sufficient if the slave was the property of Lewis. It was not necessary that she should have been in his possession also in order to enable him to convey.

As to the refusal to grant a new trial, there was manifest want of diligence in respect to the newly-discovered evidence. (Luckett *v.* Townsend, 3 Tex. R., 119; Madden *v.* Shappard, 3 Id., 49.)

WHEELER, J. For the appellant it is insisted—

1st. That as by the deed of gift under which the plaintiffs claim the plaintiff Margaret was entitled to the possession and control of the negroes during the minority of her children, her conveyance to the defendant entitled him to their possession and control during that period; and that the court erred in refusing the first instruction asked by the defendant.

2d. That to entitle the plaintiffs to recover, they must have averred and proved payment or a tender of the money due upon the mortgage; and that the court erred in refusing the second and fifth instructions asked by the defendant.

3d. That the plaintiffs were not entitled to recover if the title or right of

possession of the negro was in any person [317] other than themselves; and that the court erred in refusing the fourth instruction asked by the defendant.

4th. That the court erred in refusing a new trial.

1. The plaintiffs, in their petition, did not state specially the character of their title, but alleged generally ownership in themselves. Under this general allegation they gave in evidence, without objection, the title under which they claim, which showed the general property in the children, and only a special property in the mother. The title shown by the plaintiffs is doubtless such as will support an action for the possession of the property. The mother, as trustee, and entitled to its possession and control for the children during their minority, might perhaps have maintained the action without joining the guardian; but in the character which this action assumed under the pleadings and evidence it is not, we think, an objection which can defeat the plaintiffs' right to recover that the minors, in whom was the beneficial interest and ultimate absolute ownership, were by their guardian made parties plaintiff to the suit.

Whether the interest of the mother was such as to enable her to convey to another the right to the possession and control of the negro during the minority of the children it is not necessary now to determine. If her right be conceded, it is admitted that her conveyance, under which the defendant claims, was not intended as an absolute conveyance of any interest which she may have had, but was only a mortgage, and of course subject to her right of redemption. That she had the same right to redeem in this case which she would have had if she had been the absolute owner of the property is quite too clear for argument. The first objection, therefore, which proceeds upon the supposition that the conveyance to the defendant was absolute, is clearly untenable. And the first instruction asked by the defendant, based upon the same assumption, was irrelevant, and was therefore rightly refused.

2. The second ground upon which it is sought to reverse the judgment is untenable for two reasons: 1st. The defendant [318] asserted a claim of absolute ownership in the property mortgaged; and this has been held to dispense with the necessity of a tender of the money due before suit for the property. (Luckett v. Townsend, 3 Tex. R.. 119, and authorities cited.) 2d. The hire of the negro had extinguished the debt. The plaintiffs could not be required to tender money which in equity and justice they did not owe.

It is objected that the plaintiffs did not allege in their petition that the debt was extinguished by the hire of the negro. But the petition contained a claim for damages for her detention, and the plaintiffs proved the value of her hire without objection. Under the evidence it was competent for the jury to estimate the value of the hire and apply it to the extinguishment of the debt. This they appear to have done; and it is now too late to object to the sufficiency of the allegation under which this evidence was given or to the admissibility of the evidence.

3. The object of the defendant in asking the fourth instruction appears to have been to set up the defense of an outstanding superior title in a third party. This it was not competent for him to do by an instruction to the jury when in his answer he had not set up this defense. That a party cannot in this manner avail himself of an affirmative matter of defense which he has not pleaded we have repeatedly decided. (2 Tex. R., 460.) The court had given the third instruction asked by the defendant, in which he charged the jury that to entitle the plaintiffs to recover they must prove that they are the legal owners of the negro, and are entitled to the possession. Upon this point the defendant could not ask more.

4. The remaining ground on which it is sought to reverse the judgment, the refusal of the application for a new trial, is also untenable. The application rested upon the affidavit of a witness who had been introduced and examined by defendant on the trial. No reason is stated why he was not then examined in respect to the facts stated in his affidavit. No surprise is alleged and no diligence is shown. It is not even stated that [319] the evidence came to the knowledge of the defendant since the trial. And we have heretofore held that

to entitle a party to a new trial on the ground of newly-discovered evidence, he must satisfy the court, *first*, that the evidence has come to his knowledge since the trial; *secondly*, that it was not owing to the want of due diligence that it was not obtained sooner; and, *thirdly*, that it would probably change the result upon a new trial. (Madden *v.* Shappard, 3 Tex. R., 49.)

No rule, indeed, is better settled than that a new trial will not be granted on the ground of newly-discovered evidence, when with due diligence the party might have had the benefit of the evidence at the trial. (7 Yerg. R., 432; 6 Blackf. R., 496; 1 Id., 367; 18 Johns. R., 489.) Where matters might have been offered in evidence on the trial, but were not, they form no ground for granting a new trial. (3 Ire. R., 310.) A want of recollection of a fact which, by due attention, might have been remembered, is not a ground for granting a new trial. (7 Mass. R., 205.) Nor is an inadvertent omission by a witness to state all he knows material to the case. (2 S. & M. R., 597.) And it has been held that the affidavit made by one who had been a witness in the cause, swearing to further important facts not stated by him on the trial because his recollection did not serve him, is only cumulative evidence, and not a sufficient ground for granting a new trial. (4 Har. R., 76.) It is clear that the court did not err in refusing a new trial. And from the view we have taken of the various grounds now urged for a reversal of the judgment, we conclude that there is no error in the ruling of the court in refusing instructions asked by the defendant or in the judgment.

The proposition asserted in the sixth and seventh instructions asked are not deemed of a character to require notice.

Judgment affirmed.

Note 63.—Sweeney *v.* Jarvis, 6 T., 36; Long *v.* Steiger, 8 T., 460; Latham *v.* Selkirk, 11 T., 314; Pinkard *v.* Pinkard, 14 T., 356; Dean *v.* Border, 15 T., 298; Stewart *v.* Hamilton, 19 T., 96; Augustine *v.* The State, 20 T., 450; Angell *v.* Strut *et al.*, 21 T., 485; Frizzell *v.* Johnson, 30 T., 31; Koontz *v.* The State, 41 T., 570.
Note 64.—King *v.* Gray, 17 T., 62.

