Lipscomb, J.
From the terms of the covenant of John W. Smith with Joseph Baker and the circumstances which transpired between the date of its execution and the commencement of this suit can the aid of a court of equity bo invoked for a specific performance? or should the plaintiff be left to compensation in damages if any for its breach? This is tlie inquiry presented for' our consideration, and the fact that tlie land in question has been sold by tlie administrator of Smith under an order of sale made by the Probate Court, and the proceeds of that sale only, and not a conveyance of the land, is now .«ought, cannot divert our inquiry whether a specific performance ought under the"circumstances to be decreed if the land hud not been sold. Because if it would not, then the plaintiff has no right to (he fund he is seeking to have applied to his use.
I will examine first the objection presented on the face of the covenant. It seems to me to want au essential element in its structure to give it effect either against tlie maker or his representatives; it is wautiug ‘in not showing a valid consideration, and it wants mutuality. Smith is bound by it when it imposes no corresponding obligation on Baker.- Chauccllor Kent says that “It seems to be very generally and very properly laid down in the books that “a court of equity will never decree performance when the, remedy is not “mutual, or one party only is hound by the agreement.” (Parkhurst v. Van Cortlandt, 2 Johns. Chan. R., 282,) and lie refers to Arringer v. Clark, Bunb., 111; Troughton v. Troughton, 1 Ves. R., 86; Lawrenson v. Butler, 1 Sch. & Lef., 13; Bromley v. Jeffres, 2 Ves. R., 415. The chancellor assorts the same principle in Benedict v. Lynch, 374, same volume cited, and says that a contrary doctrine had been held in some cases in England, but that *73 from the more recent decisions the principle he had laid down prevailed there now.
This is not however the ground on which I am instructed by my associates to-rest the decision of the court. We believe that our decision eau be placed more, sat isfaci orily on the intrinsic merits of the case, admitting that the covenant ought (o liave been specifically performed, and that it was a fair subject for the exercise of equity jurisdiction to compel such performance had the application been made within a reasonable time after the covenant had been, broken, or after the time when Baker could have demanded performance from-Smith. But if a party having rights will slumber on them for years, he need not be surprised when he wakes up to find that other rights have intervened to prevent the enforement of his own. Both courts of law and equity turn an-il uwilling .ear to those who show no vigilance in the assertion of their rights. By the covenant 'Smith was hound to convey to Baker as soon as the survey had been made. It appears from the record that this was done 1st June, 183S, and (lie patent to Smith bears date Oth Jane, 1841. The salt was brought to the Spring Term of the court,ISIS.
"What effect, this lapse of time, near ton years, should have on the equitable rights of the plaintiff will now lie considered. It is an acknowledged rule o£ equitable, jurisprudence that a party entitled to a specific conveyance of property, personal or real, will not be, permitted to bold back from an assertion of his* rights and speculate upon the chances of such changes as may decide whether It would he to his interest to have the conveyance made, but lie is required to be vigilant and prompt in flic assertion of those rights; and if change-- have, occurred during this lapse of.time in the value of the property to he com eyed, or in the consideration to he paid, a court of equity will always refuse its aid and leave the party to seek redress wlicro tlie law bad left him,, by a suit, for tlio breach of the covenant. Now it is a matter of history, and the fact s Í oo are established by the record, that for wars after this contract was entered into such was the uncertainty of the G-ovcrunicnt’s being able to sustain iiself, and tlie Indians were so troublesome in the neighborhood of ,81111 Amonio, that land was considered of very little value, and many would liave preferred an unlocated certificate to the best land in the vicinity of that place, belli 011 account of (rading it better and affording ail opportunity to locate in a neighborhood promising greater security. If the. covenant had been then satisfied, S111it.l1.could liave located other lauds of nearly equal value to the land which is t lie subject of this suit; but now an unlocate.d certificate would afford to his representatives no such advantage; tlie laud has appreciated near tenfold, and it would he wholly impossible to decree a specific performance upon any known principle of equity and do justice to the. representatives of Smith. This state of things could not have occurred had Baker, in the language of Lord Kenyon, (quoted by the master of the rolls in Milward v. Thanet, 6 Ves. R., 720.) '‘shown himself ready, desirous, prompt, and eagar” in the assertion of his rights. We therefore come to the conclusion that a*specific performance cannot be decreed.
There, is another aspect in which tins case may be presented that would bring us very satisfactorily to tlie same conclusion. It is an old and well established rtlie familiar to equity jurisprudence that lapse of time will create a presumption that the parties have waived or settled their rights, and such stale claims when brought into a court of cliaucery are received without favor-and. entitled to hut little consideration unless attended with circumstances that will repel such presumption. This doctrine will he found laid down by Chancellor Kent in Ellison v. Moffat, (1 Johns. Chan. R., 46.)and in Ardens’ Ex’ors v. Ardens’ Ex’or. (Id., 313.) It will be found to liave been uniformly acted upon and recognized by the court of chancery in South Carolina, (Riddlehover v. Kinuard, 1 Hill Ch., 378,) and in Sims v. Autrey, (4 Srobh. R., 117,) Chancellor Dargan, in giving the opinion of tlie appellate court affirming the decree of Chancellor Dunkin'made on the circuit, uses the following strong
*74 language on this subject, the Chancellor following strictly the course of the decisions, makes these observations : “After the possession of twenty-five years “ the court will presume a sale by Hie executor for (lie payment of debts, an “ administrator da bonis non after Lyle’s death, a sale by such administrator, “ or almost anything else, in order to quiet the possession.” lie adds, “ This “ is strong language, but not stronger than is warranted by the authorities, or “ demanded by a stern, imperative, public policy.” And he says further : “ The law requires diligence in the assertion of a right by legal actions. Life 4 Ms short, parties and witnesses are mortal; memory is frail; written muni-“inenlsare. spread upon perishable materials, and are subject to many acci- “ dents ; and time throws a veil of obscurity over transactions of the distant 11 past; under circumstances like these, is it either unreasonable or unjust that he who has a claim should be required to assert it within a limited time?” This doctrine, in principle, is believed to prevail in some degree in every community of men, both savage and civilized; but in most if not'in all of tlie’States of the American Union a period of t ime has been fixed, upon by j udicial sanction, after which these presumptions wall arise. Such rule however as to the period of time, is not considered to have any iufinence beyond the jurisdiction of its own forum, and every court governed hy the rules of equity jurisprudence must adapt it as to the length of time to peculiar circumstances. The same learned Chancellor whoso opinion has been last cited says: “As to the pre-ciso timo at which they (presumptions) arise, each independent community “ must judge for itself. IVo have adopted the law of the mother country. In “ South Carolina, as in England, by the lapse of twenty years without, admis“sions, specialities and judgments are presumed to be satisfied, and trusts dis- “ charged.” The discussion of this subject ill the opinion of this court at its last term in Lewis v. San Antonio sustains the proposition stated hy the chancellor just cited, that each community may establish its own rule as to the precise time. It would, however, seem to us to he exceedingly difficult to lay down a rule that should he one of universal application. Each case would depend in some degree on iLs own peculiar circumstances. If, however, a rule should he adopted in analogy to the rule prevailing in England, there would he many and cogent reasons against adopting the precise time prescribed hy that rule. From the situation of our country, our records, muni-ments and evidence of title are not so permanent and well scoured as they are in old and well-regulated communities. And every one of observation would readily perceive and admit that there are more changes and incidents crowded into five years with ns than could occur in twenty in England or in South Carolina. It would seem then that (.ho principle could and would he better guarded at any rate until our population has become more permanent and society better regulated, tobe governed more by the peculiar circumstances than by any fixed rule as to time. The better authority seems however to be that a point of time should be as-mined analogous to the law of limitations of (ho forum where there is no express limitation to the remedy. The difficulty then is to determine to which law of limitation to refer as analogous to the relief sought. Hr. Angelí says (hat when a conveyance of land is the relief sought courts of equity will apply the statutory bar prescribed to the action of ejectment. (Angelí Lira. 25, see. 2.)
But suppose the case where there was no person in the actual possession of the land to which title was sued for, it maybe, doubtful whether either the five years that to the possessor gives a liar or the ten years that bars an entry would either of them apply; 'and if cither, which one. If the legal title should be considered as giving a constructive possession, perhaps the five years; if not, it is difficult to perceive how the ton years could apply to such a caso. If we had a statute of limitation that was express in barring the action, or one analogous, such limitation would lie a good defense, without resorting to any olheral tending circumstances. If we have none, express ov analogous, it would seem that we could Ifiy down the rule as to the time ourselves, (An- *75 " Dim., 21, sec. 1,) but from tlie circumstances before noticed we feel uuwill-t.o do so.
There is another head of equitable jurisprudence that there can be no doubt had a common origin with all laws of limitation. We mean laches and neglect. 3Ir. .Justice Story says: “If lie (the party) has been guilty of gross ladies, or if “•he applies for relief after a long' lapse of time, unexplained by equitable e.ir- “ ctitnsianees, his bill will be dismissed, for courts of equity do not, any more “ than courts of law, administer relief to the gross negligence, of suitors.” To this rule. lie says, there is some qualification. (2 StoryDq., 771.) The qualification M-etns to be tills, that although there may have been ladies, yet, if a part 1ms been performed or paid, tluibill will not be dismissed, but the defendant. will he decreed to refund, to malve compensation, or to a specific performance. What ladies will be sufficient to defeat the equity depends upon circumstances. In the case cited, by Chief Justice ITcmphill, in Hemming v. Zimmerchitle, (4 Tex. R., 166,) the plaintiff had notice, that defendant had abandoned it is contract, did not. lile his hill for nearly a year afterwards; the delay wits held to lie. unreasonable, and the, bill dismissed. (Watson v. Reed, 1 Russ. & Myl., 236; 4 Pet. R., 311.) In the caso cited from 4 Tex. It. the court say: "In the cases generally whore the effect of ladies has been the “ subject of discussion the contract had not been fully executed by either party, “and Pne one against whom relief was sought had indicated by his acts or “expression ; Ids intention to disavow or abandon the contract.” ■ In the. case •miller coiifiiloralioii the obligee had nothing to do. If the exchange liad been made ¡i"'¡vea!ily to the contract títere would have been a full performance and execution of die, covenant; it it. was not made cadi party would have been in the same condition they were in before, as each would have the same land; anti when Smith indicated by his acts suchas a failure to convey as soon as the surrey had been made and lire taking out. tie> p-itent in his own name, ih • obligee, Baker, if lie wished to compel its o.nfor,- meiit, then should haw commenced suit. At all events, when Smith took th- patent in his own ltattf, and from that period, laches may bo imputed to him. it is, however, contend'd on the part of the appellants that Smith became the trustee for Baker, and held the land in trust, for him, and that it was a continued trust. The correctness of the principle is admit ted, if títere was nothing for Baker to do. But it. is material to inquire he v I mg, under the circumstances of this case, tli * (rust continued. In the *■■;,■ before, cited from 4 Tex. It. the court uses Urn following language : “in this ease, the vendee having performed ills “obligation, the. vendor’s subsequent possession or interest in the land was “held in trust, and in subordination to the superior equitable right of the “ vendee, and this possession would continue to maintain its fiduciary character “until the vendor would manifest an intention to claim and enjoy the land ¡is ■“his own. The possession would then become adverse.” To apply the prin-cipie : when Smith failed to make the conveyance, and took (lie patent out in his own name, the trust was at an end, ami he held adverse to Baker.
When tin1 circumstances, as presented by the. rerord in this ease, arc considered, they so strongly conduce, to prove that (he contract, had been mutually abandoned, that we have no hesitation in saying Unit such evll'iice, unrebut-ted, would have sustained a verdict of a jury for the defendant, had a suit been brought, on the obligation to recover damages for its breach. We will recapitulate tlie strongest, of this circumstantial evidence; it is the long acquiescence of Baker; the patent, recorded in the public archives of the <infry, which all persons are bound (o (alee notice; Baker's being a clerk in the land office; liis silence as to any right to the land or claim upon the estate when Vande.rlip told him that lie. was indebted lo the estate., which lie admit tod; the death of Smith and Baker, culling oil' the probability of better proof, before, this suit was commenced. And the record presents nothing on the part of .the appellant to rebut and explain this prima facie evidence of an abandonment. The judgment of the court below is affirmed.
Judgment affirmed,
Note 32. — Tinnen v. Mebano, 10 T., 21(5; Emmons v. Oldham, 12 T., 24; Smith v. ITampton, 13 T., 450; Iicdding o. Redding, 15 T., 219; Nichols u. Pilgrim, 20 T.. 420; Gibsou u. Pi for, 21 T-, 200; Glasscock v. Nelsou, 2G T.. 150; Carlisle v. Ilart, 27 T., 350; Geary v. Cummins, 23 T., 91; MeMasters v. Hills, 30 T., 591; Flemming v. Reed, 57 T.,152.
Note 33. — Turner v. Smith, 11 T., 020; Robertson -y. Wood, 15 T., 1; Grumbles v. Grumbles, 17 T., 472; Hunter v. Hubbard, 20 '1'.. 537.
Note 31. — Smith v. Hampton, 13 T., 459. Limitation will not commence to run until there is some act upon the part of the vendor indicative of an intention to hold adversely to the ven-dee or those claiming under him. (Holman v. Criswell, 15 T., 394; Early v. Sterrell, 18 T., 113.)