JOHN C. GIBBONS, ADMINISTRATOR, &C., v. JESSE W. BELL, ET AL.

1. STATUTE OF FRAUDS—LOCATIVE INTEREST IN LAND.—A contract by which parties agree to acquire land together, one furnishing the certificate, and the other the labor and expense of surveying and procuring patent for it, is not a contract for the purchase and sale

27

of land by one to the other, but is an agreement by which they are to acquire land jointly.

2. PAROL PARTITION OF LAND.—Land thus acquired may be partitioned by parol by the owners.

3. LOCATOR—EQUITABLE RIGHTS.—When a contract for location is consummated by the issuance of the patent, the party in whom the legal title is vested holds it in trust for his co-tenant to the extent of his interest. The legal title is a bare, naked trust in the patentee, held in subordination to the superior equitable rights of the locator, to the extent of his undivided interest before partition and for the specific part allotted to him afterwards.

4. STALE DEMAND—EQUITABLE TITLE.—Though in such case the facts relied on in an action for the land and damages are alleged as of date more than ten years before the institution of the suit upon such title, the petition would not for that cause be subject to demurrer as settling a stale demand.

APPEAL from Fannin. Tried below before the Hon. W. H. Andrews.

This was an action of trespass to try title, brought by appellant against Bell, who claimed to be the vendee of the heir of Charles Carson, the original grantee of the land in controversy.

Appellant claimed a locative interest of one third of Carson's headright, by virtue of a parol contract to locate Carson's headright certificate, and a subsequent verbal partition of the land between plaintiff's testator, (Williams) and Charles Carson, the patentee, by which ten hundred and forty-three acres of Carson's two thirds of a league and labor situate in Fannin county was set apart by verbal agreement and actual survey to plaintiff's testator, and actual possession delivered to him many years ago; this seems to have been always acquiesced in by Carson during his life and by his heirs since his death, until since appellee (Bell) set up a claim, as the vendee of Carson's heir, and took possession.

Defendants recovered judgment final on demurrer in the court below, from which plaintiff appeals.

The grounds upon which defendants' special exceptions were sustained were the statutes of frauds and limitation, stale demands, &c.

*V. W. Hale*, for appellant.—It will be borne in mind that this is not a suit for specific performance of a contract to convey land, but it is an action of "trespass to try title," and for damages, as well as to remove clouds, and for possession, in which the plaintiff asks the court to determine which of the titles is the better, &c.

It is not necessary that a contract to locate a land certificate for a part of the land should be in writing, to take it out of the operation of the statute of frauds. (See Stuart *v.* Baker, 17 Tex., 417; Miller *v.* Roberts, 18 Tex., 16–19; Evans *v.* Hardeman, 15 Tex., 480–485; Watkins *v.* Gilkerson, 10 Tex., 343.)

This was a contract to acquire land jointly—one of the parties furnishing the certificate and the other performing the labor and paying the expenses—and is not, therefore, obnoxious to the provisions of our statute, because not a contract for the sale of land. It is not every contract concerning lands that is void, unless reduced to writing, but only contracts for the sale of lands. In support of this proposition reference is made to the able elaborate opinion of Chief Justice Hemphill, in James *v.* Fulcrod, 5 Tex., 515, *et seq.* (See also Stuart *v.* Baker, 17 Tex., 418; Miller *v.* Roberts, 18 Tex., 19.)

When the patent issued to Carson, he held this ten hundred and forty-three acres (undivided) in trust for Williams, not occupying the relations of vendor and vendee, but rather that of trustee and *cestui que trust*, joint owners or joint tenants; and if a legal and valid partition was made subsequently between them, then the legal and equitable title of each to his part, vested and became complete. It is said that a verbal partition is not valid. Without referring to more of the numerous cases in answer to this proposition, we will cite Smock *v.* Tandy, 28 Tex., 130, and Stuart *v.* Baker, above referred to.

This verbal partition, followed by possession, of Williams and those to whom he sold part of the land, and part being

severed from the balance of the tract by actual survey, giving a plat and the metes and bounds, acquiesced in by Carson during his life and by his heirs after his death, certainly binds parties and privies, and is such a title as will in equity prevent the running of the statute of limitation.

Appellee, Bell, only purchased the interest of the sole heir of Carson in this tract of land, and no claim was ever set up to this land by Carson, or his heirs, or any other person, until appellee, Bell, undertakes to extend his deed over Williams's locative interest, and, in pursuance of his fraudulent designs, forcibly takes possession, &c., whereupon plaintiff at once sues, not to get a title from him, but to expel him and recover damages, &c.

Equity will take a verbal partition of land out of the operation of the statute of frauds (even the statute of England) to prevent fraud, notwithstanding the statute. (Brown on Statute of Frauds, secs. 74, 75, 76.)

Hemming *v.* Zimmerschitte, 4 Tex., 159, and De Cordova *v.* Smith, 9 Tex., 129, are authorities relied upon by counsel for the appellee to establish that this is a stale demand, barred by the statute of limitation, and that the parties are presumed to have waived their rights, &c. We cannot see how those cases can have any application in this case. The cases referred to were each a suit to enforce the "specific performance" of a title bond, in which the obligee claimed a right to the land through the obligor by virtue thereof; whereas, in the case now before the court, the plaintiff claims for his testator a good and valid title to the land in controversy, by virtue of his original acquisition from the State, and by virtue of the verbal partition, and not through Carson, the original grantee, or any person claiming under him.

He held the legal title in trust for Williams until the partition, when it fully and completely vested in Williams, and but for the recent and wrongful conduct of appellee, Bell, no suit would ever have been necessary; and no cause of action ever arose in favor of plaintiff against any person, until ap-

pellee wrongfully took possession of the land in controversy a very short time prior to the institution of this suit.

It has been argued that appellant's testator ought to have caused an administration on Carson's estate and obtained a title through the Probate Court. This proposition is completely refuted by Paschal's Dig., art. 1313; Peters *v.* Phillips, 19 Tex., 73, and Norris *v.* Duncan, 21 Tex., 595; besides, this is not a suit for specific performance on an executory contract to convey land. Williams did not buy the land from Carson; he was an original joint owner of an undivided interest, which became vested, fixed, certain, and complete to one thousand and forty-three acres, known and described by metes and bounds, by virtue of the agreed parol partition, and Williams had no right to incumber his estate with the useless expense of such a proceeding.

*E. L. Dahoney* and *Throckmorton & Brown,* also for appellants.

*Maxey & Lightfoot,* for appellees. No brief for appellees reached the reporters.

MOORE, ASSOCIATE JUSTICE.—The appellants, as the administrator and heirs of William W. Williams, deceased, brought suit, November 17, 1870, against the appellees, for the recovery of a tract of land described in their petition, and alleged to be a part of two thirds of a league and labor patented to Charles Carson.

The facts upon which appellants rely to maintain their title, and to recover the land for which they sue, are fully disclosed in their petition. They are in effect that, in the year 1844, said Williams made a parol contract to locate and procure a patent on said Carson's headright certificate for one third of the land to be thus acquired; that in pursuance of this agreement he located said certificate on the land in controversy, and procured a patent for the same, in the name

of said Carson, about the 17th of November, 1845; that some time thereafter, by the mutual consent and agreement of said Carson and Williams, said land was partitioned and divided in accordance with the stipulations of the said contract, whereby two thirds thereof was set apart to the former and one third, including the land claimed by plaintiffs, was set apart and allotted to the latter; that said partition was mutually acquiesced in and acted upon by said parties, and always recognized and respected by said Carson from the time it was made until his death, who, however, died, without having executed to said Williams a deed for the land so partitioned to him; that said partition had also been acquiesced in and respected by the heirs and representatives of said Carson from his death, prior to September 15, 1869, when they executed a deed to the defendant, Jesse W. Bell, for all their interest in said two thirds of a league and labor of land; that said Bell, since that time, has committed acts of trespass, &c. Upon the facts alleged in their petition, of which we have attempted merely a brief summary, the plaintiffs pray for judgment, divesting all legal title remaining in the heirs and assigns of said Carson to the land set apart by said partition to said Williams, and vesting the same in the plaintiffs; that the deed to said Bell and the other defendants, so far as they affect said land claimed by the plaintiffs, be declared nullities, set aside, and held for naught, and that all clouds upon their title be removed, and that they have judgment for said land and for damages as alleged.

The defendants demurred to the petition, and assigned a number of different grounds of special exceptions, only one of which, however, seems to have been regarded by the court as well taken. As it distinctly appears from the record that the judgment on the demurrer was based entirely on the exception that "plaintiff's claim is a stale demand, more than ten years having elapsed from the time the same accrued," a brief consideration of the rights of the parties under the contract between Williams and Carson, and the relation in

which they stood to each other after the issuance of the patent under which the land is held, will show, we think, that the ruling of the court on this exception is erroneous.

A contract by which parties agree to acquire land together, one furnishing the certificate, and the other the labor and expense of surveying and patenting it, is not a contract for the purchase and sale of land by one to the other, but, as has been frequently held by this court, it is an agreement by which they are to acquire the land jointly. (Smock *v.* Tandy, 28 Tex., 132; Miller *v.* Roberts, 18 Tex., 19; Evans *v.* Hardeman, 15 Tex., 480; Watkins *v.* Gilkerson, 10 Tex., 340.) And when land has been thus jointly acquired, that it may, if the owners see fit, be partitioned by parol, cannot be questioned. (Stuart *v.* Baker, 17 Tex., 417; Houston *v.* Sneed, 15 Tex., 307.) When the patent is obtained, the contract is consummated and completed. The party in whom the title is vested holds it in trust for his co-tenant to the extent of his interest. The obligations imposed by their contract having been performed by the party locating the certificate, the legal title is a bare, naked trust in the patentee, held in subordination to the superior equitable rights of the locator to the extent of his undivided interest before partition, and for the specific part allotted to him afterwards. (Hemming *v.* Zimmerschitte, 4 Tex., 159; De Cordova *v.* Smith, 9 Tex., 129.) The fact that the contract vests in parol may occasion difficulty and embarrassment in establishing it, if it should be controverted or denied, but will in no way change or vary its nature or effect, if fully and satisfactorily established. The equitable title of the locator, who has fulfilled all stipulations on his part, is similar to that of a vendee under a bond for title when the entire purchase-money has been paid. The vendor in such case is a trustee, without interest, for the vendee, and the trust relation continues unless plainly repudiated, or there is some intention shown by the vendor to claim or hold the land adversely to the vendee. (Id.) And even when a court of equity might refuse to entertain a bill to divest the legal

title out of the trustee, it would not permit it to be used as a sword to destroy the superior equitable title to which it was previously held in subordination. From the petition, it appears that nothing occurred tending in any way toward a repudiation or denial of the trust until the sale to Bell by the heirs of Carson of their interest in the tract of land patented to their father, if their deed justly admits of this construction, which was only a little more than a year before suit was brought. Under these circumstances, if plaintiffs' right to a judgment for the land and damages for the trespasses upon it can be denied, it is not because they are concluded by the allegation of their petition, but by reason of their inability to establish their rights in accordance with the principles and rules of law applicable to such a case on a trial before the jury.

The other exceptions to the petition have not been discussed by counsel, and as none of them seem to go to the merits of the action, we do not feel called upon to give them a critical examination.

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.