[Opinion delivered May 24, 1880.]

---

WILLIAM B. AIKEN v. HALE & McDONALD.

(Case No. 2931.)

1. STATUTE OF FRAUDS — SPECIFIC PERFORMANCE — PAROL AGREEMENT TO CONVEY.— Land located, surveyed and ready for patent, has, in contemplation of law, been acquired by the owner of the certificate, and a verbal agreement to convey an interest in it to one who procures a patent thereon is not an agreement between the parties whereby each would be entitled to a designated portion, but is within the statute of frauds, and specific performance cannot be enforced.

2. PLEADING.— The objection that an agreement for the sale of land was verbal may be raised by demurrer, if the fact appears from the petition (5 Tex., 552); and where the defendant pleads general issue, the burden is upon the plaintiff of proving a valid agreement capable of being enforced. 29 Tex., 411.

APPEAL from Lamar. Tried below before the Hon. John C. Easton.

The opinion states the facts.

*Maxey, Lightfoot & Gill,* for appellant.

*Bennett, Ballinger & Bennett, Dohoney & Ellis, H. D. McDonald* and *D. H. Scott,* for appellees.

WALKER, P. J.— This was a suit brought by the appellees against the appellant, for damages for the breach of a verbal contract respecting land; by a subsequent amendment of the original petition, the plaintiffs prayed for a specific enforcement of the contract, whereby one-third of the land should be decreed to them under the contract, and also alternatively praying for their damages, if they were not entitled to a specific performance of the contract.

The contract between the parties above referred to, as described and set forth in the plaintiffs' petition, was in effect as follows: W. B. Aiken stated to the plaintiffs that he and one W. M. Campbell jointly had purchased from a certain assignee in bankruptcy, at a bankrupt sale, a tract of land consisting of seven hundred and sixty-two acres, situated in Grayson county, Texas, to wit: seven hundred and sixty-two acres surveyed for Henry D. Woodsworth, assignee of Geo. H. Hall, by virtue of duplicate, dated April 17, 1847, No. $\frac{544}{644}$, issued by Thomas W. Ward, commissioner of general land office, it being the unlocated balance of said Hall's head-right of one thousand two hundred and eighty acres, and situated on the east fork of Trinity waters; beginning at the southwest corner of Page Stanley's six hundred and forty acre survey, thence, etc., giving fully the field-notes of said tract of land.

"That said defendant stated that he did not know anything about the land, or the title thereto, except as has been stated, and that he desired the plaintiffs (who were attorneys at law) to ascertain whether or not his and Campbell's title was good; and, if not, to take whatever legal steps might be necessary to perfect it. Plaintiffs allege that,

through correspondence with other attorneys at law at Sherman, Grayson county, they obtained an abstract of the title to said land, and on the 16th day of May, 1872, presented the same, with other information connected with the same, to the defendant, all of which is made an exhibit to the petition." . . . "Whereupon the defendant said that if we (the plaintiffs) would cause to be issued, or procure a patent from the state of Texas to said H. D. Woodsworth, his remote vendor, in consideration therefor he, defendant, would grant and convey to plaintiffs one undivided one-fourth part of his half of the land described, which would be ninety-five and one-quarter acres thereof; that he was satisfied his title would be good if the patent be issued to Woodsworth."

"Plaintiffs alleged an acceptance of said proposition" (which was verbal) "at once." . . . The petition alleged that they had complied with their undertaking; causing patent to issue as was contemplated by the contract.

The petition made all further essential allegations of demand of defendant for compliance with his promise to convey to them the said one-fourth; his refusal to do so, together with prayers for relief, in original and amended petitions, as has been already stated.

The defendant answered by general demurrer, and excepting specially because the amended petition "sets up a verbal contract for a specific performance;" a general denial, and an answer to the facts, which specially controverts plaintiffs' allegations as to their compliance with their contract. The demurrer of the defendant, together with his exceptions, were overruled by the court. The cause was submitted to a jury, who found a verdict for the plaintiffs for one-fourth of the undivided half of the land owned by the defendant; upon which the court decreed the same to the plaintiffs.

Motions for new trial and in arrest of judgment were made by the defendant, and were overruled; who then appealed, and assigns numerous grounds of error, among which are these, viz.:

The overruling of defendant's demurrer and exceptions; and the overruling defendant's motion for new trial for the reasons therein stated.

Under the view which we take of the case, we shall not deem it necessary to state the record more fully than we have done, nor to consider any other assignments of error than those which we have designated.

The important and decisive question involved in this case is whether the contract relied on by the plaintiffs is or is not within the statute of frauds. It was presented properly by the defendant's pleadings; the petition alleged that the contract was verbal. The objection that an agreement for the sale of land was merely verbal, if the fact appears from the petition, may be raised by demurrer. Garner *v.* Stubblefield, 5 Tex., 552. And where the defendant pleads the general issue, and denies the agreement *in toto*, he throws on the plaintiff the burden of proving a valid agreement, capable of being enforced. Patton *v.* Rucker, 29 Tex., 411; citing Ridgway *v.* Wharton, 3 DeG., McN. & God., 689; Ontario Bank *v.* Root, 3 Paige, 378; 6 B. Mon., 104; 2 Pars. on Cont., 548, note. Thus it is seen the question is fully made and arises under defendant's pleadings, both upon the demurrer and upon the facts and merits of the case on the trial before the jury.

The first section of the statute of frauds provides that "no action shall be brought . . . upon any contract for the sale of lands, tenements or hereditaments, or," etc., . . . "unless the promise or agreement upon which such action shall be brought, or some memorandum thereof, shall be in writing and signed by the party to be charged therewith, or by some person by him lawfully authorized."

The contract relied upon by the plaintiffs was an agreement to convey to the plaintiffs a portion of the land when it should be patented, according to the other conditions attached thereto; and the true inquiry is whether the same constituted an agreement between the parties whereby they would acquire together certain land, and thereafter or thereupon the plaintiffs should be entitled to a designated portion

of the same. If it allows of that interpretation, under numerous decisions of our supreme court, the contract would clearly not fall within the terms or meaning of the statute. James *v.* Fulcrod, 5 Tex., 512.

If the land is to be acquired, the party who obtains it in pursuance of such a contract holds the legal title in trust for both. Such parol contract thus to acquire land is valid. James *v.* Fulcrod, *supra;* Watkins *v.* Gilkerson, 10 Tex., 350; Ross *v.* Armstrong, 25 Tex. Sup., 355; Smock *v.* Tandy, 28 Tex., 132.

In Gibbons *v.* Bell, 45 Tex., 423, the court clearly discriminates the ground upon which such a contract is withdrawn from the influence of the statute of frauds; citing some of the above cases, and also Miller *v.* Roberts, 18 Tex., 19, and Evans *v.* Hardeman, 15 Tex., 480; Hemming *v.* Zimmerschitte, 4 Tex., 159, and De Cordova *v.* Smith, 9 Tex., 129. The court said, " a contract by which parties agree to acquire land together, one furnishing the certificate, and the other the labor and expense of surveying and patenting it, is not a contract for the purchase and sale of land by one to the other, but, as has been frequently held by this court, it is an agreement by which they are to acquire the land jointly."

It may also be partitioned by parol agreement to do so. Stuart *v.* Baker, 17 Tex., 417; Houston *v.* Sneed, 15 Tex., 307.

" The equitable title of the locator, who has fulfilled all stipulations on his part, is similar to that of a vendee under a bond for title, when the entire consideration has been paid." Gibbons *v.* Bell, 45 Tex., 423.

All the cases, from James *v.* Fulcrod, 5 Tex., 512, down to the present time, which have maintained agreements relating to lands as not having been within the operation of the statute of frauds, will be found to be entirely consistent with the foregoing exposition of the doctrine contained in the case of Gibbons *v.* Bell, *supra.* And not one of them will be found to encourage the idea that an agreement to convey lands already located, surveyed, and ready for patent, would be embraced within their scope and meaning; lands

thus situated have already been *acquired* by the locator and owner of the certificate, if the latter is genuine, and the survey a valid one, and are not the subjects of agreements of that kind, so far as relates to obtaining title from the government. " All certificates for headrights, land scrip, bounty warrant, or any other evidence of right of land, recognized by the laws of this government, which have been located or surveyed, shall be deemed and held as sufficient title to authorize the maintenance of actions of ejectment, trespass, or any other legal remedy given by law, all laws to the contrary notwithstanding." Pasch. Dig., art. 5303.

" Our courts have recognized a survey, by virtue of a valid certificate, as a valid right; a right of property, as fully as any other rights. . . . It is recognized by the government as the property of the locator and his assigns, and not public domain, by being taxed and sold for taxes, the same as other lands. . . . It gives a right which is the subject of possession ; *of purchase;* and of inheritance. It is sold under execution, and administered in the probate court. It is regarded in the community as possessing but little less marketable value than patented land." Hamilton *v.* Avery, 20 Tex., 635. The recognition by our courts of this right in and to the land by virtue of the location and survey thereof by virtue of a certificate, and right to hold, possess and sue for it, or for injuries to the owner's rights thereto, and to compel even the issuance of a patent thereto (Comm'r Gen. Land Office *v.* Smith, 5 Tex., 480; Hart *v.* Turner, 2 Tex., 374; Hughes *v.* Lane, 6 Tex., 294; Howard *v.* Perry, 7 Tex., 267), determines beyond controversy that the tract of land concerning which the plaintiffs and defendant contracted was not a floating and uncertain expectancy ; a mere possible right to be afterwards acquired for their mutual advantage and interest; but was then, at the time of the contract, a valid survey of land, the title to which was then as perfect and available in the assignees or vendees of the original grantee for most purposes, as it became after the issuance of the patent. The verbal agreement, therefore, had no relation to a tract of land to be acquired by the parties, but it was

one which provided that the owner of the same should, in consideration of certain specified services to be performed in relation to the completion of the title in all its parts, convey to the plaintiffs one-fourth thereof. "A contract to convey lands for certain services is within the statute of frauds; and if the services are rendered, the contract cannot be enforced unless in writing." Parsons on Con., 3d vol., p. 35. A contract of this kind cannot be distinguished from an agreement to convey land at a future day upon consideration of a pecuniary equivalent to be paid. We entertain no doubt whatever on the question, and are well satisfied that the contract alleged was one falling clearly within the statute, and for the breach thereof cannot be enforced at law. We will not, however, dismiss the cause, but will award that it be reversed and remanded for further proceedings, in order that the plaintiffs may, if they desire to do so, and the facts enable them to do it, set up by amendment their cause of action upon a *quantum meruit* for the value of their services.

A sale of land, or an agreement to convey lands, under contracts which are within the statute of frauds, will, when there has been part performance of the contract by the purchaser, under certain circumstances, be enforced in equity. Those circumstances, however, to warrant the specific enforcement of the contract, must consist in such facts, in addition to that of having received the consideration, as would render it inequitable to permit the vendor to retain the benefit of his advantage; as where he has placed the vendee in possession of the land, and he has expended labor and means in making improvements. Reynolds *v.* Johnson, 13 Tex., 215; Taylor *v.* Ashley, 15 Tex., 50; Dugan *v.* Colville, 8 Tex., 128; Neatherly *v.* Ripley, 21 Tex., 435.

In this case the plaintiffs do not assert nor claim any other equity than that which proceeds from the bare compliance with their part of the contract; the defendant has persistently refused to recognize its binding force; and it presents the naked question whether such contract can be enforced by damages for its breach, or by decreeing a specific per-

formance of its terms, based solely upon the performance of the services — or payment, as it were, of purchase price agreed upon by the parties. It was held in Ann Berta Lodge v. Leverton, 42 Tex., 18, "that tender of purchase money, making improvements by the vendee (it not appearing that the vendee expended beyond rents received by him), and possession, do not constitute such *part performance* of a parol agreement for sale of land as will justify a decree for specific performance of such parol agreement."

The contract being within the statute of frauds, and there being no equities in favor of the plaintiffs which can be invoked to vary the ordinary consequence which attaches to the restrictions of that statute, it must be held that no action lies upon it.

The judgment of the district court will be reversed and the cause remanded.

REVERSED AND REMANDED.