R. Peterson et al. v. G. W. Ward et al.

No. 56.

1. **Description in Deed.**—A certificate was issued for one league and labor of land. The grantee of the certificate conveyed an undivided one-third interest, describing certificate as for "one-half league." *Held*, the misdescriptive word one-half did not vitiate the deed. Reference was made in the deed to the certificate. Under the laws of Texas at the time the certificate was issued, a certificate for one-half league could not issue as a headright. In a deed where several particulars are descriptive of the premises conveyed, if some are false or inconsistent and the true be sufficient of themselves, they will be retained and the others rejected. Therefore an undivided one-third interest in the league and labor located by virtue of the certificate was conveyed by the deed.

2. **Adverse Possession — Trust.** — When the patent was issued to the grantee of the certificate he had the legal title of one-third, which he had conveyed in subordination to the equitable title as to which he was a trustee; and having never repudiated the trust in his lifetime, his heirs after his death could not repudiate it and recover the land from his vendees in possession of an equitable title superior to the legal title in the heirs. Gibbons v. Bell, 45 Texas, 423; Robertson v. Du Bose, 76 Texas, 10.

Appeal from Uvalde. Tried below before Hon. T. M. Paschal.

*Edward Guthridge*, for appellants.—1. The description of the land in the conveyance from Ward to Fowler was sufficient to convey the land in controversy. Const. Republic of Texas 1836, sec. 10; Early v. Sterrett, 18 Texas, 116; Steinbeck v. Stone, 53 Texas, 386; Berry v. Wright, 14 Texas, 270; Kingston v. Pickins, 46 Texas, 99.

2. Ward in his lifetime never attempted to contest the claim of defendants to the interest claimed by them to the land in controversy. Had he undertaken to do so, such action would have been in the nature of a stale demand against him; and if there is any stale demand in this cause the same applies to the plaintiff Ward's heirs, and not to defendants. Martin v. Parker, 26 Texas, 254; Bell v. Warren, 39 Texas, 109; Robertson v. Du Bose, 76 Texas, 10; McKin v. Williams, 48 Texas, 92; Reed v. West, 47 Texas, 240; Gibbons v. Bell, 45 Texas, 417.

3. Where grantor, by silence and acquiescence, recognizes the rights of the grantee for years after he executes the conveyance to him, during which time the grantee and his devisees have been in possession of the land and paying taxes thereon, plaintiffs (the grantor's heirs) can not recover. Rev. Stats., secs. 3191, 3193, 3195.

*Clark & Old*, for appellees.—The pretended conveyance, if ever executed, was void for want of description and misdescription of the land claimed; and to reform a deed would require evidence, if not special pleading. Dull v. Blum, 68 Texas, 300; Harkness v. Devine, 11 S. W.

Rep., 872; Coke v. Roberts, 9 S. W. Rep., 665; Water. on Spec. Per., secs. 152, 154, 380.

NEILL, ASSOCIATE JUSTICE.—The appellees, G. W. Ward, Nancy Peters, and Sarah A. Humphris, brought their suit in trespass to try title in the District Court of Uvalde County on August 2, 1889, against Maria M. Fowler, Della, Etta, Nora, and Dora Fowler, the last four of whom were then minors, and D. H. Scott as the guardian of their estate, N. B. Pulliam, and Richard Peterson, to recover a survey, number 60, of 26 labors of land, patented to James J. Ward, assignee of Mathew McCabe, on February 25, A. D. 1847.

The defendants answered by pleading not guilty, and the three, five, and ten years statute of limitation.

The case was tried by the court without a jury, and judgment was rendered for the appellees for the north half of the survey, from which judgment this appeal is prosecuted.

*Conclusions of Fact.*— 1. On the 23rd day of March, 1838, a certificate for a league and labor of land was issued by the Board of Land Commissioners of Red River County to James J. Ward, assignee of Mathew McCabe.

2. On the 16th day of October, 1838, the land in controversy was located by virtue of said certificate, and the field notes returned to the General Land Office on December 31, 1838.

3. On the 25th day of February, 1847, patent to the land was issued by virtue of said certificate and survey, to James J. Ward, as assignee of Mathew McCabe.

4. For some years prior to the issuance of said certificate, and up to A. D. 1858, James J. Ward lived in Red River County, during which year he moved to Palo Pinto County, where he resided until he died, in 1870. He was married at the time he acquired the certificate, and his wife survived him, dying in 1875.

5. At the time of his death he left surviving him a daughter, who is the plaintiff Sarah A. Humphris, and two grandchildren, who are the other plaintiffs.

6. On the 20th day of February, 1843, J. J. Ward executed the following deed to A. J. Fowler:

" Know all men by these presents, that I, James J. Ward, of the county of Red River, in the Republic of Texas, for and in consideration of the sum of $1817, the receipt whereof I hereby acknowledge, have bargained, sold, and transferred and conveyed, and do by these presents bargain, sell, transfer, and .convey to A. J. Fowler, of the county of Lamar, in the Republic aforesaid, all my rights, title, and interest that I have in and

to certain lands of the following description, to-wit: An undivided interest of one-third of one league and labor of land, being the claim of the headright of Minerva Boren; one undivided interest of one-third in and to the headright claim of John Pew; of one-half league and labor of land, being the headright claim of Rebecca McGown, located on the waters of the Cypress; an undivided interest of one-third in and to one league and labor of land, being the headright claim of Adam Hampton, located and situated in Lamar County aforesaid, on Crockett's Creek, adjoining the surveys of the headright claims of Mathew Click and Richard Thomas; an undivided interest of one-third in and to one-half league of land, being the headright claim of Mathew McCabe; all of which said claims being issued by the Board of Land Commissioners of Red River County; giving to said A. J. Fowler a quitclaim to the same: To have and to hold, from me and my heirs to him and his heirs, forever.

" In testimony whereof, I have hereunto set my hand and affixed my seal, this the 20th day of February, in the year of Our Lord eighteen hundred and forty-three.

" J. J. WARD.

"A. S. SKIDMORE,
    his
" DAVID X FRILEY."
    mark

7. On the 15th day of April, 1873, A. J. Fowler made a deed to J. H. Fowler, reciting therein that on the 20th day of January, 1844, he had transferred to J. H. Fowler all his interest in certain lands conveyed to him by J. J. Ward on the 20th day of February, 1843, including "an undivided interest of one-third in one-half league of land, being the headright claim of Mathew McCabe," and that the written transfer referred to had become worn and defaced, and that he made the deed of April 15, 1873, in lieu of the one referred to.

8. On March 7, 1847, J. J. Ward wrote the following letter to A. J. Fowler:

"Mr. A. J. Fowler:

" DEAR SIR—John H. Fowler alleges that he has bought of you all the lands I sold you, and proposes to make sale of a portion of them, and I feel it my duty to give you information of that fact; and I would further state that the lands I sold you, as well as I recollect, were one-third of the partnership lands owned by Shelton, Fowler, and myself, to-wit: A league and labor, Adam Hampton's headright; a league and labor, Rebecca McGown's headright; one-half league, headright of Mathew McCabe; also Minerva Boren's headright league; one-half of John Pew's headright league, and also one-half of Adam Hampton's headright league. The one-third of the above lands, you will recollect, I gave you a quitclaim conveyance, for which you satisfied me; and if I rightly recollect

I also sold you a part of William B. Ward, deceased, headright, one section less than one-third of a league, and also one section in part of Joseph Cox headright. I have been thus particular, that if there is anything wrong in J. H. Fowler's making sale, you might do well to look to it; and while I give you this information as a friend, I want it distinctly understood that there is no additional obligation of the sale of said land, only in evidence of the sale as above specified. March 7, 1847.

"J. J. WARD."

9. On August 1, 1868, J. F. Fowler, by his deed of that date, conveyed to R. Peterson and John L. Fowler, together with other tracts of land, one-half of a league and labor of land in Uvalde County, describing it as the land located and patented by virtue of the headright certificate of Mathew McCabe; which was acknowledged on August 1, 1868, and recorded in Frio County June 3, 1875.

10. About the 26th day of September, 1856, James J. Ward conveyed to Amos Morrill an undivided one-half interest in the league and labor sued for, which interest was transferred by mesne conveyances to Thomas Hannahan.

11. On the 26th day of October, 1878, in a suit by Hannahan against J. J. Ward, in which Ward was cited by publication, his residence being alleged unknown, for partition of the land, Ward not answering or otherwise appearing in the case, the south half of the survey was allotted to Hannahan and the north half to Ward.

12. Peterson and Fowler paid taxes on the land for thirty years next preceding the trial of this case in the District Court.

13. Neither Ward nor his heirs asserted any claim hostile to appellants' title until the institution of this suit, nor paid any taxes on it after Ward sold to Morrill.

*Conclusions of Law.*—Does the conveyance by Ward to A. J. Fowler of an undivided one-third interest in and to one-half league of land, being the headright claim of Mathew McCabe, issued by the Board of Land Commissioners of Red River County, describe the land in controversy, or give data from which the description may be found and made certain? If it does, the description is sufficient. Catlett v. Starr, 70 Texas, 488; Norris v. Hunt, 51 Texas, 614; Bowles v. Beal, 60 Texas, 324; Coker v. Roberts, 71 Texas, 602; Overland v. Menczer, 83 Texas, 123. Under the Constitution and laws of Texas in force at the time the certificate to McCabe was issued, a headright certificate could not issue for one-half of a league of land. It must have been for a league and labor, if issued to the head of a family, or for one-third of a league, if issued to a single man. McCabe was entitled to, and there was issued to James J. Ward, as his assignee, by the Board of Land Commissioners of

Red River County, a headright certificate of one league and labor. It was an undivided one-third interest in " land, being the headright claim of Mathew McCabe issued by the Board of Land Commissioners of Red River County," that was conveyed by Ward to Fowler; and its being described as "a half of league," instead of a league and labor, was not such a misdescription as would vitiate the deed, for when the headright claim of McCabe issued by the Board of Land Commissioners was referred to, it would show that the quantity of the land was a league and labor, and not a half of a league. If, in construing the deed, any force should be given to the words " one-half" preceding the word " league," it would, on account of the inconsistency between the terms and the descriptive words following, render the deed nugatory; for we have seen that there could be no such a " headright claim " as a half a league of land in this State.

In construing a deed, when several particulars are named, descriptive of the premises conveyed, if some are false or inconsistent, and the true be sufficient of themselves, they will be retained and the others rejected. Worthington v. Hylyer, 4 Mass., 196; Jackson v. Clark, 1 Johns., 217; White v. Herramann, 51 Ill., 243; Vose v. Handy, 11 Am. Dec., 101. Applying this principle, rejecting the false and taking the true, and giving to them their full meaning, it is evident that a one-third undivided interest in the headright claim of Mathew McCabe issued by the Board of Land Commissioners of Red River County, which is the league and labor of land in controversy, was conveyed by the deed.

When the deed was made by Ward to A. J. Fowler, the land, though located, had not been patented. When the patent issued to Ward he held the legal title, in subordination to the equitable title of Fowler, to a one-third undivided interest, which vested in him by virtue of the conveyance. As to Fowler's interest, the legal title was a bare naked trust in the patentee. Ward was a trustee simply, without interest in the third he had conveyed, for his vendee; and the trust relation continued until it was repudiated by Ward's heirs in instituting this suit; for there is no evidence showing any intention on the part of Ward or his heirs to claim or hold the land adversely to Fowler or his assignees until this suit was filed. Gibbons v. Bell, 45 Texas, 423; Robertson v. Du Bose, 76 Texas, 10.

In Gibbons v. Bell, supra, the court said: "Even when a court of equity might refuse to entertain a bill to divest the legal title out of the trustee, it would not permit it to be used as a sword to destroy the superior equitable title to which it was previously held in subordination." It was never used or attempted to be used as such weapon by James J. Ward during his lifetime. He was true to his trust for a period of over thirty years. His heirs can not now recover possession of the property from his vendees who hold possession of the land by virtue of an equitable title superior to the legal title of appellees.

Under our view of the law, arising from the facts in this case, we are of the opinion that the judgment of the District Court should be reversed, and such judgment rendered here as it should have rendered.    James J. Ward, having conveyed an undivided one-third interest in the Mathew McCabe headright of one league and labor to A. J. Fowler, owned four-sixths of it in his own right when it was patented; of this, he sold three-sixths (one-half) to Amos Morrill, leaving him one-sixth, which, upon his death and the death of his wife, descended to appellees, which they are entitled to recover.

Therefore, no partition being prayed for, the judgment of the court below is reversed, and judgment is here rendered against appellants in favor of appellees for one-sixth, only, of the entire league and labor of land in controversy, without regard to the decree of partition in the case of Hannahan v. Ward, to which appellants were not parties, and by which they were not affected.    It is further ordered and adjudged, that appellees recover of appellants all costs in the court below, and that appellants recover of appellees all costs incurred on this appeal.

*Reversed and rendered.*

Delivered November 1, 1893.

Motion for rehearing refused.