# SUPREME COURT OF TEXAS.

## AUSTIN, 1855.

---

JOSEPH W. ROBERTSON, ADM'R, v. REUBEN D. WOOD.

The possession of a vendee, holding under an executed conveyance from the pur-
chaser in an executory contract, and openly and notoriously asserting absolute
proprietorship in himself, under his conveyance, within the knowledge of the
original vendor, is adverse to the title of the latter, and becomes a complete bar
thereto in five years.

But even an express trust may be determined by the act of the trustee; and this
will occur whenever he denies the right of the *cestui que trust*, and assumes
absolute ownership of the property, adversely to, and within the knowledge of,
the *cestui que trust*.

Appeal from Travis. Suit by Reuben D. Wood against Jo-
seph W. Robertson, commenced February 22nd, 1850, to recover
a lot of ground in the city of Austin. Plea of not guilty;
adverse possession as administrator *de bonis non* of George M.
Dolson, for three years under color of title, of part of the lot;
adverse possession, as administrator aforesaid, for five years,
under deed duly recorded, paying taxes thereon, of same part
of the lot; adverse possession, as administrator aforesaid, of
same part for ten years. The pleading detailed all facts res-
pecting the title, and showed that both parties claimed under
Martin Clark.

Vol. XV.          1

The evidence was as follows :   Plaintiff introduced a deed for the lot, from Martin Clark, of Williamson county, State of Tennessee, to plaintiff, dated October 17th, 1849, recorded in Travis county, June 18th, 1850 ; and proved that he notified the defendant, before commencement of the suit, that he, the plaintiff, was informed that the defendant claimed the property in controversy, as the administrator of George M. Dolson, who held, by purchase or otherwise, from Albert G. Kimball, who contracted with Martin Clark for the purchase thereof on the 14th of January, 1840 ; that plaintiff had purchased from Clark, and that he was ready to make title according to Clark's contract with Kimball, on payment of the balance of the purchase money, less the amount paid to the Government by Kimball and those claiming under him on the original purchase of the lot ; and that on refusal to comply with said contract, plaintiff would sue to recover the property.   Plaintiff then proved the value of the mesne profits since the commencement of the suit, and rested.

The defendant then gave in evidence the certificate of purchase from the Government to R. M. Spicer, dated August 1st, 1839 ; assigned to Martin Clark, January 1st, 1840 ; bond for title, from Clark to Kimball, dated January 14th, 1840.   The consideration of the bond was Kimball's note for the whole of the purchase money, at twelve months, and the condition of the bond was :   "Now if the said  Clark  shall make, or cause to be made, a good and sufficient title to the said described ground, when the above note of two thousand five hundred dollars is paid, then the above obligation to be void, otherwise to remain in full force and effect ;" (This bond was handed to the defendant, on the trial, the same having been in the possession of the plaintiff's attorney;) deed in fee simple, with general warranty, from Kimball to William Renney, consideration paid ; dated August 8th, 1840 ; recorded August 18th, 1840 ; executory contract of sale by Renney to George M. Dolson and Charles F. King, dated August 18th, 1840 ; reciting the

payment of part of the purchase money, and stipulating for the payment of the balance, when title should be made ; recorded August 18th, 1840 ; deed from King to Dolson, dated June 12th, 1841, and recorded August 18th, 1841 ; defendant then proved that he was administrator *de bonis non* of Dolson ; that Renney, King, Dolson and Dolson's administrator, had continuous, uninterrupted possession, claiming the title to the property, openly and notoriously in their own right, from the spring of 1840 to the commencement of this suit ; paying the taxes thereon regularly ; that the plaintiff admitted that Clark was aware of the purchase by Renney from Kimball, and that he knew that Renney claimed the title in his own right from Kimball ; and that Dolson's administrator paid the last instalment on the whole of said lot, to the Government, on the ——— day of ———, amounting to the sum of ——— ; that said payment prevented the forfeiture of the whole of the lot, and was made for that purpose. It was admitted that Kimball had paid Clark one-half of the purchase money, and it was proved that there was no registry of the title from Spicer to Clark or from Clark to plaintiff, until 1850 ; it was admitted that Clark left the Republic in 1840, and never returned.

The plaintiff, by way of rebutter, proved by W. S. Oldham, that in the year 1849, Kimball brought to witness the title bond from Clark to Kimball, to consult with him as attorney, with a view of bringing suit upon the bond for a specific performance ; witness declined to state the communications made to him by Kimball ; he advised him that he could not maintain his suit ; after that time, Kimball proposed to witness to join him in the purchase of Clark's interest in the lots ; that Kimball said he preferred abandoning the contract with Clark to paying the balance due upon the contract, specified in Clark's bond to him, twelve hundred and fifty dollars and the interest ; that he had paid half of the purchase money, and that the other half remained unpaid ; that witness agreed to join him in the purchase, but before they could ascertain Clark's resi-

dence, Kimball went to California; that in 1850 the plaintiff came to Austin, and employed witness as his attorney in relation to the property, and that the bond being in witness's possession, he furnished defendant's attorney with it, to be used on the trial.

The Court instructed the jury that the possession of Kimball and those claiming under him, was the possession of Clark; that limitation did not run in their favor; and that if they believed from the evidence that Clark sold the land to the plaintiff, and that the condition of the bond of Kimball had never been complied with, they should find for the plaintiff; to which said ruling the defendant excepted. Verdict and judgment for plaintiff.

*J. A. & R. Green,* for appellant.

*W. S. Oldham,* for appellee. (The briefs in this case were not with the Transcript. REPS.)

WHEELER, J. The principal question arising upon the record, to which counsel have directed their attention in argument, is as to the running of the Statute of Limitations in favor of the defendant's possession.

The opinion of this Court in the case of Browning v. Estis, is relied on by the appellee, as supporting the instructions and ruling of the Court adversely to the defence of the Statute. It unquestionably is, as there stated, "a settled principle of law, that a possession of land, taken under an executory contract for the purchase thereof, is in no sense adverse to the person with whom the contract is made." (3 Tex. R. 476.) But this is only where the contract is executory; and to this rule, it was said, there are exceptions; as where the whole of the purchase money has been paid, and the stipulations on the part of the vendee performed. In this and other cases which may be supposed, his possession may be adverse. (Ib.)

But the question here, is whether the possession of the vendee, holding under an executed conveyance from the purchaser in the executory contract, and openly and notoriously asserting absolute proprietorship in himself, under his conveyance, within the knowledge of the original vendor, is adverse to the title of the latter. And this, it is conceived, is a question which it will not be difficult to answer, upon principle and authority.

The purchaser, in an executory contract for the sale of lands is the trustee of his vendor ; and while he sustains this relation, his possession is not adverse, and the Statute of Limitations does not run in his favor. But even an express trust may be determined by the act of the trustee. And this will occur whenever he denies the right of the *cestui que trust*, and assumes absolute ownership of the property he holds in trust, adversely to and within the knowledge of the *cestui que trust*. There can be no stronger case put, of an express, continuing trust, than that which subsists in the relation of landlord and tenant. " The principle of estoppel applies to that relation, and operates in its full force to prevent the tenant from violating that contract by which he obtained and holds possession." (3 Pet. R. 47.) He cannot change the character of the tenure by his own act merely, while the relation subsists, so as to enable him to hold against his landlord. Yet, by his own act, he can put an end to the relation. If he disclaims to hold under his lease, he becomes a trespasser, and his possession is adverse. When he publicly disclaims his landlord's title and professes to hold under a title hostile to that of his landlord, the trust relation is determined, and the Statute of Limitations will begin to run from the time of such disclaimer. (Ib., and see, Turner v. Smith, 11 Tex. R. 620, and cases cited.)

Here the possession was taken and held by the defendant, under an executed contract, conveying absolutely the fee ; and was accompanied by an assertion of right, and a claim of absolute proprietorship, openly and notoriously, and within the actual knowledge of Clark, under whom the plaintiff claims.

If this did not put an end to the trust relation created by the executory contract of purchase ; if the possession thus held was not adverse to the plaintiff's title, it would be difficult to conceive of anything which would put an end to that relation and render the possession of the tenant adverse. "If," (says the Supreme Court of the U. S., in Boone v. Chiles, 10 Pet. R. 223,) "the entry was by purchase, and the purchaser claims the land in fee, he is not a trustee ; his title, though derivative from, and consistent with the original title of the plaintiffs, is a present claim in exclusion of and adverse to it. A vendee in fee, derives his title from the vendor ; but his title, though derivative, is adverse to that of the vendor ; he enters and holds for himself." The vendee acquires the property for himself, and his faith is not pledged to maintain the title of the vendor. This principle, it is conceived, is decisive as to the adverse character of the possession taken and held by the defendant under the executed absolute conveyance to himself, as the vendee in fee of the lot in controversy. The case of Houston v. Parsons (2 Bailey, S. C., R. 59,) is in point. There, where A, having contracted to purchase lands of B, paid part of the purchase money, but titles were never made, and A gave the land to his son C, who went into possession ; the possession of the latter, it was held, was adverse both as to A and B.

It is to be observed as to the plaintiff's case, moreover, that his vendor does not appear ever to have acquired a title to the land in controversy, from the government. And a forfeiture of such right as he had acquired, was prevented by the payment of the residue remaining unpaid, of the original purchase money, by the defendant ; not for the benefit of the plaintiff's vendor, but for his own benefit, to enable him to maintain his claim of absolute and exclusive proprietorship. That the possession, acquired and held by him, was, under the circumstances, adverse to the title set up by the plaintiff, seems too clear to admit of controversy. It was continued for a period of more than five, and indeed of ten years, next before the

commencement of the suit, under deeds of conveyance, duly registered, the defendant paying the taxes upon the lot. The right of action, therefore, was clearly barred by the provision of the 16th Section of the Statute of Limitations. (Hart. Dig., Art. 2392,)

As the Statute must be decisive of the case, it is unnecessary to discuss the other questions presented. We are of opinion that the Court erred in the instruction and rulings adversely to the defendant, as to the running of the Statute of Limitations; for which the judgment must be reversed and the cause remanded.

Reversed and remanded.