LASSITER v. BOUCHE et al.    (No. 10171.)

Court, of Civil Appeals of Texas.   Dallas.
March 31, 1928.

Rehearing Denied April 28, 1928.

1. Trusts ⚖==17, 18(3)—Parole trust may be engrafted on deed absolute in form.

The doctrine that a parole trust may be engrafted on a deed absolute in form is well established in the jurisprudence of Texas.

2. Trusts ⚖==17, 18(4)—Oral agreement to hold land in trust in consideration that heir would forego contest of wills held invalid under statutes (Rev. St. 1925, arts. 1288, 3995).

Oral agreement to hold land in trust in consideration that heir would forego contest of wills held invalid under Rev. St. 1925, art. 1288, prohibiting the conveyance of estates of inheritance or freehold in lands except by written conveyance, and action for conveyance could not, because of Rev. St. 1925, art. 3995, declaring that no action may be brought on any

contract for the sale of real estate, unless the agreement or some memorandum thereof is in writing and signed by the party to be charged, be maintained.

3. Trusts ⚖==13—Abandonment of heir's privilege to contest wills held valuable consideration for devisee's agreement to hold land in trust.

Alleged abandonment of heir's privilege to contest the validity of her mother's and brother's wills held valuable consideration for devisee's agreement to hold land in trust.

4. Husband and wife ⚖==193, 194—Married woman's agreement with sister to hold in trust land devised held ineffective, where execution was not joined in by husband and acknowledged by wife apart from husband (Rev. St. 1925, art. 1299).

The agreement of a married woman with her sister that, in consideration that sister would not contest wills of their mother and brother, former would hold in trust land devised to her, which was her separate property, held ineffective, where execution was not joined in by former's husband, and acknowledged by her privily and apart from her husband, as required by Rev. St. 1925, art. 1299.

5. Limitation of actions ⚖==103(3)—Cause of action for enforcement of parole trust engrafted on deed, if existent, held barred by lapse of 28 years after grantee's repudiation of trust by will (Statute of Limitation).

Cause of action for the enforcement of an alleged parole trust engrafted on a deed, if existent, held barred by the statute of limitation by grantee's action, 28 years before suit for enforcement of the trust was brought, in repudiating any trust relationship by the terms of his will disposing of all his property interests, in which no reference to the trust was made, and in which claimant was bequeathed a small sum of money, with the provision that she should receive no more.

6. Witnesses ⚖==126—Statute rendering heirs incompetent to testify to transactions with decedent will be liberally construed (Rev. St. 1925, art. 3716).

Courts are inclined to be liberal in their interpretation of Rev. St. 1925, art. 3716, which, creating exceptions to a general rule, renders heirs of deceased persons incompetent to testify to transactions with, or statements by, the decedent in actions by or against heirs arising out of any transactions with such decedent, when liberal construction is necessary to carry out the spirit and meaning of the exception.

7. Witnesses ⚖==139(9)—Status of daughter suing deceased mother's grantees to impose oral trust held that of heir, precluding her testifying as to transactions with decedent (Rev. St. 1925, art. 3716).

Status of daughter suing persons to whom her mother had deeded land to impose an oral trust on the conveyance held that of an heir of her mother, precluding her testifying to statements of and transactions of grantee with mother, because of Rev. St. 1925, art. 3716, where mother had deeded to daughter the mother's alleged rights in land in trust for mother's heirs;

deed being given in order that distribution to mother's heirs might be simplified.

**8. Trusts ☞44(2)—Evidence held not to show grantees took land subject to oral trust.**

In suit by daughter to impose oral trust on land her deceased mother had deeded to defendants, evidence *held* not to show grantees took land subject to an oral trust for the mother.

Appeal from District Court, Dallas County; Newman Phillip, Judge.

Suit by Mrs. M. W. Lassiter against Jennie L. Bouche and others. Judgment for defendants, and plaintiff appeals. Affirmed.

White & Yarborough, of Dallas, for appellant.

Locke, Locke, Stroud & Randolph, of Dallas, for appellees.

LOONEY, J. Appellant, Mrs. M. W. Lassiter, sought to establish an express trust in a certain lot of land situated in the city of Dallas, and, based on the existence of the trust, she sought to recover a one-half interest in the lot.

The land in question constituted a part of the community estate of Elisha H. Kendall and his wife, Julia Kendall. Elisha Kendall died intestate in the year 1879, leaving surviving his widow, Julia, and three children, to wit, Jennie L. Bouche, wife of A. E. Bouche, C. P. Kendall, and Mollie E. Wright, wife of J. W. Wright, the latter two being the mother and father of appellant.

On April 23, 1883, Mrs. Wright, joined by her husband, conveyed by general warranty deed her undivided one-sixth interest in the lot in question, together with other lands in the city of Dallas, inherited from her father, to her sister, Mrs. Bouche, and her brother, C. P. Kendall. The recited consideration for this conveyance was $1,250 cash, and the conveyance by grantees to her of 160 acres of land situated in Marion county, Tex.

C. P. Kendall died on January 10, 1895, leaving a will, by the terms of which, among other small bequests, he left to his sister, Mrs. Wright, $50 in cash, with the stipulation that she should receive nothing further from his estate. The remainder of his estate, including his interest in the land in controversy, he left to his mother, Julia Kendall, for life, with remainder in fee to his nephew, Julius Edmond Bouche. Mrs. Julia Kendall died in September, 1896, leaving a will, and, among certain small legacies, one was in favor of her daughter, Mrs. Wright, for $50 in cash and a sewing machine, containing a provision, however, that she should receive nothing further from the estate. The balance of her estate, including her half interest in the land in controversy, testator left in equal portions to her daughter, Mrs. Bouche, and her son, C. P. Kendall, with a provision that,

in the event of the death of C. P. Kendall prior to her death, the property left to him should go to her grandson, Julius Edmond Bouche. These wills were duly probated, inventories and appraisements were filed, including the interest as above stated of each testator in the land in controversy.

Thus it will be seen that the legal title to the lot in question at the time of the death of Julia Kendall in 1896 stood one-half in Mrs. Jennie Bouche, made up as follows: One-sixth inherited from her father; one-twelfth conveyed to her by her sister, Mollie Wright and husband in 1883; and one-fourth acquired through the will of her mother. The legal title to the other half of the lot was in Julius Edmond Bouche, made up of the one-fourth acquired under the will of his uncle, C. P. Kendall, and one-fourth under the will of his grandmother. This was the status of the legal title at the time this suit was instituted on October 23, 1924.

In regard to the existence of the trust sought to be established, appellant alleged, in substance, that the deed executed April 23, 1883, by her mother, Mollie E. Wright, and her father, J. W. Wright, conveying their interest in the lot in question to C. P. Kendall and Jennie L. Bouche, was for the purpose of protecting C. P. Kendall, who, it seems, was an invalid, and Mrs. Julia Kendall, the mother, in the use and occupancy of the lot so long as either should live, on the agreement then made by and between Mollie E. Wright on the one part and C. P. Kendall, Jennie L. Bouche, and Mrs. Julia Kendall on the other that, when both C. P. Kendall and Mrs. Julia Kendall were dead, the land in question would be owned and divided equally between Mollie E. Wright and Jennie L. Bouche. Appellant further alleged that the wills of C. P. Kendall and Mrs. Julia Kendall disregarded this agreement, and were the result of undue influence brought to bear upon testators; that C. P. Kendall was an imbecile, and mentally incapacitated to execute a will; that soon after the death of Julia Kendall, on or about September 10, 1896, Mollie E. Wright, mother of appellant, demanded of defendant, Jennie L. Bouche, a partition of the property in accordance with the agreement of 1883, and, after a verbal dispute as to the existence of such an agreement, it was then agreed between Mollie E. Wright and Mrs. Bouche that, if Mrs. Wright, who was then questioning the validity of the wills in question, would refrain from contesting the will of Julia Kendall, which had not at that time been probated, and would refrain from filing a suit to set aside the will of C. P. Kendall, which had been probated, Mrs. Bouche would hold the land in trust for Mrs. Wright and Julius Edmond Bouche until the death of her husband, A. E. Bouche (who, it seems, was appointed executor in each of said wills), un-

less a favorable opportunity for the sale of said property should be presented prior to his death; that it was further understood that A. E. Bouche should manage and control the property, collect rents therefrom, pay taxes and expenses of upkeep, and, if a surplus remained, one-half was to be paid to Mrs. Wright; and that, in pursuance of said agreement, A. E. Bouche retained custody and control of the land, collected rents therefrom, paid taxes and expenses of upkeep, and paid to Mrs. Wright one-half of the excess, and that this agreement was not repudiated by Mrs. Bouche until on or about October 10, 1924, a short time prior to the institution of this suit.

Appellant supported her allegations as to the existence of the trust by her own testimony to this effect: That in the year 1896 she overheard a conversation between her mother, Mollie E. Wright, and her aunt, Jennie L. Bouche, in which Mrs. Bouche expressed surprise that Mrs. Wright should claim any interest in the property. She denied that Mrs. Wright had any interest, as she had conveyed the same to her and her brother, C. P. Kendall, by the deed executed in 1883. But finally, after some wrangling over the proposition, Mrs. Bouche admitted the existence of the trust agreement, and then agreed with Mrs. Wright that, if she would neither contest the will of Mrs. Julia Kendall nor file a suit to set aside the will of C. P. Kendall, she would hold the property for the interest of Mrs. Wright and Julius Edmond Bouche until the death of her husband, A. E. Bouche, who was to manage the property in the meantime, or until the property had so increased in value as that it would be to the best interests of the parties to sell the same.

Upon the conclusion of appellant's evidence, the court instructed a verdict for appellees, and judgment was rendered accordingly, from which this appeal is prosecuted.

The questions discussed below have been properly presented by assignments and cross-assignments of error and related propositions.

[1] The doctrine that a parole trust may be engrafted on a deed absolute in form is well established in the jurisprudence of this state. James v. Fulcrod, 5 Tex. 512, 55 Am. Dec. 743; Bailey v. Harris, 19 Tex. 109; Leakey v. Gunter, 25 Tex. 400, 401; Agricultural, etc., Ass'n v. Brewster, 51 Tex. 257; Carl v. Settegast (Tex. Civ. App.) 211 S. W. 506; Carl v. Settegast (Tex. Com. App.) 237 S. W. 238.

Giving the testimony of appellant its full face value, the agreement of 1883 necessarily contemplated that Mrs. Julia Kendall, who owned a half interest, and C. P. Kendall, who owned a one-sixth interest in the lot of land, would, in some form, convey their respective interests to Mrs. Wright and Mrs. Bouche, to the end that, at the death of both, title would

5 S.W.(2d)—53

be in Mrs. Wright and Mrs. Bouche in equal portions; in other words, for a valuable consideration a contract for the sale and conveyance of real estate was thereby entered into.

[2] As neither the agreement nor a memorandum thereof was reduced to writing, and signed by the parties to be charged, or by any one authorized to sign for them, the same was, in our opinion, violative of article 1288 (1103) (624) (548), R. S. 1925, that prohibits the conveyance of estates of inheritance or freehold in lands except by written conveyance, and was also violative of article 3995 (3965) (2543) (2464), R. S. 1925, which declares that no action may be brought upon any contract for the sale of real estate, unless the agreement or some memorandum thereof is in writing and signed by the party to be charged.

[3] The alleged agreement of September, 1896, between Mrs. Wright and Mrs. Bouche was to the effect that, if Mrs. Wright would forego her legal right as heir to contest the will of her mother, and refrain from suing to set aside the will of her brother, Mrs. Bouche would hold the land in trust for the joint benefit of Mrs. Wright and Julius Edmond Bouche, until the death of her husband, A. E. Bouche (executor under both wills above mentioned), unless a profitable sale for the property could be made prior to his death, and, in the meantime, Mrs. Wright should share equally in all rents and revenues therefrom in excess of taxes, expenses, etc. At the time this alleged agreement was made, Mrs. Bouche owned the legal title to an undivided one-half interest in the land in question, and was a married woman. This agreement was verbal, and contemplated a conveyance by Mrs. Bouche to Mrs. Wright of an estate of inheritance or freehold in the land within the meaning of article 1288 (1103) (624) (548), R. S. 1925, and was a contract for the sale of land on a valuable consideration within the meaning of article 3995, R. S. 1925. That the alleged abandonment by Mrs. Wright of her privilege as heir at law of her mother and brother to contest the validity of their wills was a valuable consideration for the agreement, see Ruth v. Krone, 10 Cal. App. 770, 103 P. 960, 965; 28 R. C. L. p. 390, § 397.

[4] Besides, Mrs. Bouche was a married woman, the land was her separate property, and no agreement, such as is described in the pleadings and evidence, could take effect, unless its execution was joined in by her husband, and acknowledged by her privily and apart from her husband, as required by article 1299 (1114) (635) (559), R. S. 1925.

The case of Allen v. Allen, 101 Tex. 362, 107 S. W. 528, presented a very similar situation to the one under consideration. Allen, the husband, owed purchase money on land, and induced his wife to pay the same with

her separate property under a verbal agreement that the land should be hers, if she would make the payment. ·The trial court and the Court of Civil Appeals (105 S. W. 53) held that Mrs. Allen was entitled to the land on the ground that the agreement established an express trust.· The Supreme Court denied this contention, and in reversing the case, among other things, used this language:

"* * * But when the owner of land agrees, as did Allen, that for a consideration it shall become the property of another, what is that but an· attempt to convey his title, or a contract for the sale of his title? Or, if the agreement be to give the property to another, is it not merely an attempt to convey it? We can see but one answer to these questions, and it is one which brings the case clearly within the inhibitions of the statute."

In Sprague v. Haines, 68 Tex. 215, 4 S. W. 371, plaintiff alleged that he was employed to remove clouds from title to lands under a parole agreement that for his services he should have one-half of the land to which the title was made clear. He brought suit for specific performance of this agreement. The leading question 'was whether or not the contract was within the statute of frauds. The Supreme Court, in condemning the contract as violative of the statute, said:

"The words 'any contract for the sale of real estate,' as used in the statute, include every ·agreement by which one promises to alienate an existing interest in land upon a consideration either good or valuable. It is accordingly held in a number of cases that a contract to convey land in consideration of labor or services to be rendered, is within the" meaning of the "statute. [Citing authorities.] The law is thus stated in Browne on the Statute of Frauds (section 263:) 'The effect of the provision, as expounded by the courts, is to render unavailing to the parties, as the ground of a claim, any parole contract, in whatever shape it may be put, by which either of them is to part with real estate' "—citing Aiken v. Hale, 1 Posey, Unrep. Cas. 318.

We are of the opinion that the alleged parole agreements of 1883 and of 1896 were prohibited by the provisions of the statutes hereinbefore cited, as they are in effect agreements by Julia Kendall, C. 'P. Kendall, and Mrs. Bouche to sell and convey land, and are therefore void and unenforceable.

This brings us to consider whether or not the evidence was sufficient to raise an issue as to the creation of a parole trust in the one-sixth interest when conveyed by Mrs. Wright and husband to C. P. Kendall and Mrs. Bouche in 1883.

In the case of Allen v. Allen, supra, the Supreme Court, distinguishing parole trusts, such as may be engrafted on deeds absolute in form, from contracts that are condemned by the statutes, said:

"Since the decision in James v. Fulcrod, 5 Tex. 511, 55 Am. Dec: 743, it has steadily been held by this court that these statutes do not forbid proof of express trusts by parole; but, to avoid giving this doctrine the effect of abrogating the statutes entirely, we must use some discrimination in ascertaining what are to be considered express trusts which may be proved by parole. Certainly they cannot be allowed to embrace conveyances by one of his title to another, nor contracts by one to sell his title to another, for that would contradict the very terms of the law. When we examine the cases in which this doctrine is applied in this state, we find that they involved transactions in which persons having the titles have in writing conveyed or contracted to convey those titles to others for the benefit of the grantors or of third persons. Such benefit was secured by agreements or understandings sometimes between the grantors and the grantees, and sometimes between the grantees and the third persons, but existing when the titles vested under the written conveyances, and subjecting those titles to the trusts or confidences reposed in those who received them. In such cases the writing by which the right or title is passed to the trustee satisfies the statute, and there being no provision in our statute, as there is in many others, prohibiting parole proof of express trusts, the courts have admitted such proof, and this is the doctrine of James v. Fulcrod and the many cases following it."

The evidence on this point has heretofore been fully stated, and we are of the opinion that it was sufficient, in connection with other evidence found in the record, if Mrs. Lassiter was a competent witness—a question to be discussed later—to make it a question for the jury, unless obviated by other considerations.

If, as claimed by appellant, C. P. Kendall accepted conveyance of an undivided one-twelfth interest in the lot burdened with the trust agreement, it is evident he repudiated that relation when he executed the will on April 25, 1891, in which, among other bequests, he left only $50 to Mrs. Wright, and stipulated that "she shall receive nothing further from my estate." The body of his estate was left to his mother for life, with remainder to his· nephew, Julius Edmond Bouche. The will was admitted to probate by the county court of Dallas county on March 5, 1895, and a one-fourth interest in the lot in question—being one-sixth inherited by him from his father, and one-twelfth conveyed to him by Mrs. Wright and husband in 1883—was inventoried as part of his estate. Knowledge that testator had repudiated the alleged trust agreement, and of all essential facts in regard to the will, its contents, probate; etc., was possessed by Mrs. Wright in September, 1896, when it is claimed she agreed not to sue to set it aside. The legal title to the. one-fourth interest, formerly owned by C. P. Kendall, was then, and is now, as revealed by the record, vested in Julius Edmond Bouche, who is not shown to have been a party to any of these verbal agreements.

In Brotherton v. Weathersby, 73 Tex. 471, 473, 474, 11 S. W. 505, the court said:

"The doctrine is elementary that the statute of limitations does not run against an express trust until the trustee has done some act which shows repudiation of the trust, and which is brought to the knowledge of the cestui que trust."

Also, see Turner v. Smith, 11 Tex. 620; Robertson v. Wood, 15 Tex. 1, 65 Am. Dec. 140; Gibbons v. Bell, 45 Tex. 417, 423; Philippi v. Philippi, 115 U. S. 151, 5 S. Ct. 1181, 29 L. Ed. 336.

[5] We are of the opinion, therefore, that the parole trust, if in fact it ever existed as claimed by appellant, was repudiated by C. P. Kendall nearly 28 years prior to the institution of this suit, and any cause of action existing by reason of said trust, in so far as it affected the one-twelfth interest conveyed to him in 1883, was clearly barred by the statute of limitation.

Up to this point we have discovered no error in the action of the court in directing a verdict for defendants, and this without reference to the competency of appellant as a witness. If she was incompetent under the statute to testify to the statements and transactions by and between her mother, Mrs. Wright, and her aunt, Mrs. Bouche, that took place soon after the death of their mother, her whole theory as to the existence of a trust must fail for the want of evidence to support it. However, if she was competent, the court, in our opinion, erred in directing a verdict for appellees and in not submitting the case to the jury, in so far as the trust may or may not exist as to the one-twelfth interest in the lot conveyed to Mrs. Bouche by Mr. and Mrs. Wright in 1883, legal title to which Mrs. Bouche still owns.

The statute, article 3716 (3690) (2302) (2248), R. S. 1925, among others, renders heirs of deceased persons incompetent to testify to transactions with, or statements by, the decedent in actions by or against heirs arising out of any transactions with such decedent.

[6] So the question is narrowed to this: Is the status of Mrs. Lassiter in this action to be assimilated to that of an heir within the meaning of the statute? Our courts have held generally that the statute is to be strictly construed for that it creates exceptions to a general rule, hence is not to be liberalized by interpretation, so as to exclude any interested party as a witness who is not specifically named in the statute. Newton v. Newton, 77 Tex. 508, 510, 511, 14 S. W. 157. Notwithstanding this general rule, the courts are inclined to be liberal in their interpretation, when necessary to carry out the spirit and meaning of the exception.

This tendency is revealed in a number of decisions. In Parks v. Caudle, 58 Tex. 216, 221, 222, the court held that a party to a suit against heirs was not only incompetent to testify to statements by and transactions with the deceased, but also to any such statement or transaction between third parties, although occurring at a time when the witness had no interest to be affected. To the same effect see James v. James, 81 Tex. 373, 377, 16 S. W. 1087; Walls v. Cruse (Tex. Com. App.) 235 S. W. 199.

In Simpson v. Brotherton, 62 Tex. 170, the court held that a witness was incompetent to testify, although not a party to the suit, if interested in the result. The court said:

"* * * So the object of the act, excluding parties from testifying as to transactions with deceased persons, would be defeated by allowing one to testify to such transactions who was as fully interested in the result of the suit as any of the persons named as parties upon the record."

In a number of cases witnesses have been held incompetent as constructive parties, though not a party upon the record. See O'Brien v. First State Bank, etc. (Tex. Civ. App.) 241 S. W. 556; Cooper v. Neblett (Tex. Civ. App.) 203 S. W. 365, 369; General Bonding & Casualty Co. v. McCurdy (Tex. Civ. App.) 183 S. W. 796, 799.

In the latter case, the owner of a claim, who was incompetent under the statute to testify to transactions with the deceased as to the origin of the claim, transferred the same to another, who brought suit against the executrix of decedent's estate. In holding that the former owner of the claim was incompetent to testify, the court said:

"If every person who claims to have a contract with a deceased person can, by assigning his claim, free himself of the inhibition of the statute against testifying to transactions with the deceased, the statute, for all practical purposes, would be rendered nugatory, and might as well be abolished"—citing Simpson v. Brotherton, 62 Tex. 170.

Also see Williams v. Kincannon (Tex. Civ. App.) 265 S. W. 925, 928.

Mrs. Lassiter is litigating ostensibly as purchaser from her mother, and not as an heir. She holds a deed, absolute in form, in which her mother conveyed the property in question to her. Her testimony, however, reveals the fact that she is neither a purchaser nor donee, but is holding the interest conveyed as trustee for herself and other legal heirs of her mother. That the deed was executed simply as a convenient means of distribution is shown by the following excerpts from her testimony. She said:

"As to what the heirs have to do with the place if I own it, what I mean by 'heirs,' my mother left this property to me in trust, just the same as Mrs. Kendall left it to Mrs. Bouche, so I would see that each one got their part. * * * She didn't give me that deed for the heirs, but that I might see each got their part, just the same as Mrs. Bouche held the property in trust for my mother. * * * As to what the understanding was between me and

my mother about my brothers and sisters, when my mother gave me the deed, she said, 'I am turning this over to you so you can see each one of the children get their part.' She said, 'I am trusting you just the same as I know Mrs. Bouche will do to you.' * * * When my mother made me the deed, it was made solely for the purpose that I might see each one of the children got their interest. * * * She just handed me the deed and just told me she was deeding it to me,, just like my aunt had it, and, when they divided the property, they could deed it direct to me instead of to all the different heirs. My mother had raised five orphan children as well as her own, and she was just as anxious about them getting their part as the others. * * * I didn't pay my mother anything for this property. She gave me this deed just to take the property in trust for those three brothers and my sister's orphan children that she had raised and my brother's orphan children."

At her death, Mrs. Wright left four living children, including appellant, also five grandchildren, the children of a deceased son and daughter.

[7] This evidence shows that the status of Mrs. Lassiter in this action was to all intents and purposes that of an heir, at least constructively so. If appellant were claiming as heir, unquestionably she would be held incompetent to give testimony in regard to the statements and transactions that occurred by and between her mother and Mrs. Bouche in 1896, and her relation to the litigation, is, in our opinion, still constructively that of an heir, notwithstanding the conveyance executed by her mother under the circumstances and for the purposes revealed by the evidence. Not to so hold would, in our opinion, be to disregard the spirit and purpose of the statute, and render it, under facts like these, entirely nugatory.

[8] We hold, therefore, that appellant was incompetent as a witness to testify to the statements and transactions by and between her mother and Mrs. Bouche, and that her allegations with reference to the existence of an express trust find no substantial support in the evidence. The court did not err in directing a verdict for appellees, and for that reason the judgment below is affirmed.

Affirmed.