**ROBICHAUX et al. v. BORDAGES et al.**
. No. 2148.

Court of Civil Appeals of Texas.
Beaumont.
March 11, 1932.

Motion for Additional Findings of Fact and Rehearing Denied April 20, 1932.

Oliver J. Todd and E. M. Chester, both of Beaumont, for plaintiffs in error.

---

[1] No opinion filed on original hearing.

Orgain, Carroll & Bell and Ewell Strong, Jr., all of Beaumont, for defendants in error.

O'QUINN, J.

Plaintiffs in error were plaintiffs in the court below, and defendants in error were defendants. We shall refer to them as such.

Plaintiffs, S. Robichaux, J. M. Pickerill and Dr. A. W. Roark, sued J. A. Bordages in the district court of Jefferson county, January 5, 1927. By an amended petition filed September 4, 1930, C. G. Hooks and the Gulf Production Company were made defendants.

Plaintiffs alleged that they and Hooks formed a partnership for the purpose of procuring. mineral leases on the W. H. Smith league and surrounding lands, in Jefferson county—desiring to secure a "block" of leases covering from 5 to 15,000 acres—said leases calling "for the actual prospecting and drilling of test or formation wells"; that, for the purpose of accomplishing their purpose, it was agreed by said partnership to employ, and they did enter into a contract with, defendant Bordages of leasing for the partnership, upon agreed and authorized terms, the lands upon which leases were desired; that Bordages agreed with the partnership to go upon the ground, and, as the agent of said partnership, lease the largest area obtainable on, around, and in the vicinity of said Smith league, for said plaintiffs, he to receive for his services an undivided one-fifth of the profits derived from the venture whereby he became the sole agent of plaintiffs and Hooks for the purpose of obtaining said leases, the said leases to be taken for the sole benefit of and as the sole property of plaintiffs and Hooks.

They further alleged that, after said employment, Bordages went upon the ground and interviewed certain owners of land in said vicinity, and was promised leases upon their lands, and could have promptly obtained all or a large portion of the land desired "upon terms agreed and authorized by plaintiffs"; but that, after Bordages had entered upon his duties in securing leases on said lands, he delayed and suspended his efforts on behalf of plaintiffs and Hooks, and thereafter said Bordages opened negotiations with the Gulf Production Company, by the terms of which he would abandon his contract with plaintiffs, and would obtain leases for the Gulf Production Company for which he would receive a royalty of one twenty-fourth of the oil and gas, and 25 cents per ton for sulphur upon all the leases he could procure for the Gulf Production Company within said territory, by which action said Bordages was unfaithful to and violated his obligations to plaintiffs and said Hooks.

They further alleged that, after entering into negotiations with the Gulf Production Company, Bordages failed to close leases with the parties with whom he had theretofore ne-gotiated for plaintiffs, and failed to make any further efforts to obtain leases for plaintiffs as he had agreed to do, but, without consulting plaintiffs, said Bordages entered into negotiations with the Gulf Production Company, with the view of repudiating his obligations to plaintiffs, by the terms of which he should take leases which should be delivered to said company and not to plaintiffs; that, by reason of the relationship of Bordages, it was his duty to communicate to plaintiffs full information as to all the facts of his negotiations with the Gulf Production Company and to enter no agreements except with the consent of his principals, and it was his duty to diligently proceed with the work of taking leases for plaintiffs as he had agreed to do, but, on the contrary, he wholly failed to inform plaintiffs as to his secret negotiations until they were practically, if not wholly, consummated; that thereafter said Bordages communicated the situation to plaintiffs, but represented and pretended that he would be unable to secure the development leases because of the competition of the Gulf Production Company who were represented to have an eye upon the same territory in which he had agreed to lease for plaintiffs, but that Bordages informed them that the Gulf Production Company was willing to take over the territory to be leased by him for plaintiffs, and the leases negotiated for, and that Bordages represented to plaintiffs that the Gulf Production Company would pay one twenty-fourth overriding royalty upon oil and gas and a royalty of 25 cents per ton on sulphur, and proposed to his principals that all of them permit him to co-operate with said company, and, in lieu of taking the leases on their own behalf, that the said leases theretofore negotiated, and thereafter to be negotiated, should be turned to said Gulf Production Company, and that the royalties received be equally divided among the five parties (the plaintiffs, Hooks and Bordages) instead of the profits from the leases, as theretofore agreed.

They further alleged that Bordages further agreed with said syndicate (plaintiffs and Hooks) that, in addition to the overriding royalty to be obtained, he would be able to obtain for said Hooks and plaintiffs from the Gulf Production Company information as to the progress of their geophysical explorations, and that, if a salt dome should be located, he would promptly communicate said facts to plaintiffs and Hooks in order that fee royalties might be purchased by and on behalf of said plaintiffs and Hooks, which it was contemplated said Bordages should purchase for said plaintiffs and Hooks with the same carried interest to himself as in said leases, and that, upon said representations and agreement of Bordages, plaintiffs did agree that said leases might be taken and turned to the Gulf Production Company in consideration that plaintiffs receive three-fifths of a one

twenty-fourth royalty on oil and gas and three-fifths of all overriding royalties obtained from the Gulf Production Company.

They further alleged that Bordages agreed to purchase for plaintiffs and Hooks and himself, as equal owners, and that plaintiffs should be permitted to participate to the same extent in any fee royalties which might be purchased in said vicinity, and that but for said agreements plaintiffs would not have agreed that Bordages might take said leases for the Gulf Production Company. They then set out the lands on which they alleged fee royalties were purchased by Bordages, and further alleged that Bordages did not act in good faith in the premises, and did not communicate to them promptly the discovery of a salt dome, and did not purchase for them the fee royalties as he had promised, but to the contrary obtained secret information as to the finding of the salt dome, and, without communicating the information to plaintiffs, purchased on behalf of himself and others fee royalties in the vicinity, and gave plaintiffs no opportunity to participate in said purchases, but violated his agreement and obligation to plaintiffs, and acted in bad faith with his said associates by obtaining for himself, his kinsmen and associates other than plaintiffs, desirable fee royalties which were obtainable on a profitable basis in said vicinity, and obtained for himself large profits for which he had not accounted; that, because of his said unfaithful and willful conduct, Bordages had forfeited to the plaintiffs and said Hooks, any right in or to said fee royalties and profits arising from such wrongful conduct, or, in the alternative, said fee royalty interest belonged to plaintiffs, Hooks, and Bordages in equal interests; that, after entering into said agreement, Bordages repudiated his obligations to account to plaintiffs for the royalty obtained from the Gulf Production Company, and refused to account for same, and refused to account for the fee royalties purchased, or the profits by him received from said purchase, but contends that he had the right to repudiate his transactions with plaintiffs, and to take for himself all of said profits, by reason whereof all of said profits were forfeited to plaintiffs and Hooks, and are now owned by them.

They further alleged that Hooks at all times recognized, and was willing to participate with plaintiffs, and agreed to recognize, and does recognize, the rights of plaintiffs as alleged by Bordages repudiating his agreement with plaintiffs; that, by the terms of said agreement with the Gulf Production Company, and by reason of their relations, contracts, and agreement with the defendants, Bordages and Hooks, plaintiffs became entitled to three-fifths of a one twenty-fourth overriding royalty on all oil and gas, and three-fifths of 25 cents per ton royalty on all sulphur, and their aforesaid interest in said fee royalties held by aforesaid Bordages, taken from any and all lands and leases said Gulf Production Company might or did take and retain in said block. The petition then set out the leases under which plaintiffs claim Bordages had an overriding interest under his contract with the Gulf Production Company.

They further alleged that, by reason of the unlawful concealment, connivance, failure, and refusal to communicate the facts, and to use good faith with plaintiffs, and by reason of the breach of his contract and obligations to use good faith and perform his duties, said defendant Bordages took said contract for the overriding royalties, and took said carried interest in the fee-simple royalties as a trustee for plaintiffs and for said Hooks, by reason whereof they are entitled to a decree vesting in them, plaintiffs and Hooks, the title to all of said overriding and fee-simple royalties, and are entitled to an accounting with said Bordages for said royalties and any sums of money which he may have obtained therefrom, and, in the alternative, that, if plaintiffs are not entitled to receive as beneficiaries all of the royalties so obtained by Bordages that they are entitled to receive, and to have declared in trust for and to each of them an undivided one-fifth of said overriding royalties obtained from the Gulf Production Company, and from the fee simple royalties. Prayer was in accordance with the allegations in the petition.

Defendant Bordages answered, admitting the original contract alleged in plaintiffs' petition between the partnership consisting of the named plaintiffs and Hooks, on the one side, and defendant Bordages on the other. In his answer, he pointed out the lands that were to have been leased under the terms of said contract, and among said lands were tracts of land known as the "Gill" land and the "Jap" land; the last tract comprising some 1,700 acres. In his answer he alleged, as did plaintiffs in their petition, that the consideration to be paid for the leases to be granted to the partnership was the drilling of oil wells in the designated territory, and that there was not to be any cash consideration paid for leases to be procured for the partnership.

He further answered that, after entering upon his duties under his contract with plaintiffs and Hooks, he ascertained that the "Gill" lands, which were desired as a portion of the block to be leased, could not be had, for the reason that said lands were then under a mineral lease to other parties, which fact he (Bordages) reported to Hooks, a member of the partnership, and who had acted for the partnership in employing him, whereupon Hooks advised him that the Gill lands could be eliminated from the proposed block and the project be carried on without said lands, provided the Jap lands and the other lands north

of the bayou included in the territory to be leased could be secured under leases calling for drilling obligations; provided further, that the drilling obligations, the considerations to be paid for the leases, be reduced from four wells, as originally contemplated, to three wells; that he (Bordages) thereupon continued his efforts to lease lands in the territory designated north of the bayou, and had secured an agreement from the "Burrell" interests, who owned the Burrell lands, to grant a lease upon said lands lying within the designated territory in consideration of the plaintiffs and Hooks, the partnership, agreeing to drill three wells within the territory named and lying north of the south fork of Taylor's Bayou; that, in attempting to carry out the instructions of Hooks and the partnership, he approached the owners of the Jap lands, consisting of 1,700 acres, and learned that said lands could not be leased for a drilling consideration, but could be leased only by paying a cash consideration of approximately $4,000; that he thereupon reported to Hooks, of the partnership, the situation as it related to said Jap lands, and that Hooks advised him that plaintiffs and Hooks, the partnership, were not willing to pay any cash consideration for the lease on said lands, and if he (Bordages) could not secure said lands without the payment of a cash consideration, the project would have to fall through; that shortly after this Bordages learned that the Jap lands could be leased for a consideration of $2 per acre cash, and that he so reported to Hooks, of the partnership, in an effort to have said partnership secure a lease on said Jap lands, but that Hooks again advised him that they, plaintiffs and Hooks, would not pay any cash consideration for a lease upon said lands or for a lease upon any of said lands proposed to be leased, and that, if the Jap lands could not be leased without a cash consideration, and not upon a drilling consideration, as originally contemplated, the project would have to be given up; that he (Bordages) then advised Hooks that the lands would be leased to the Roxana Oil Company if the proposition to lease to the partnership for $2 cash per acre was not accepted, and Hooks told him (Bordages) that plaintiffs and himself, the partnership, would not pay a cash consideration for a lease on said lands, and that they would have to let it go to other people; and that, by reason of the matters set forth, the contract between plaintiffs and Hooks and himself thereupon ceased and determined, and he became free and without obligation to plaintiffs and Hooks to accept employment from other persons concerning the leasing of said lands or any other lands in said territory.

He further answered, specially denying that he had any agreements with plaintiffs and Hooks to share with them any part of the overriding royalties that he was to receive from the Gulf Production Company in consideration of services rendered by him, and further denied that he at any time took, on behalf of said plaintiffs and Hooks, any mineral leases in the Fannett territory or in the territory designated by plaintiffs and Hooks as the lands upon which they desired leases; that, under the leases that it was agreed he (Bordages) would take for plaintiffs and Hooks, the consideration for said leases was to be the drilling of wells in said territory, and that, upon the refusal of said Hooks to proceed with the project, the agreed consideration for said leases failed, and all the obligations on the part of the lessors who had agreed to lease said land to plaintiffs and Hooks upon the consideration named thereupon ceased and determined, and there were no leases or contracts to lease that he (Bordages), did or could have turned to the Gulf Production Company, as alleged by plaintiffs.

He further answered that plaintiffs, nor either of them, at any time contributed anything either in the way of money or effort toward carrying out the terms of the original contract between him (Bordages) and plaintiffs and Hooks.

He further answered that some time after he was advised by Hooks that he (Bordages) would have to let the Jap lands go, and that plaintiffs and Hooks were unwilling to proceed with the project and the contract between him and plaintiffs and Hooks had ceased and determined, he was approached by representatives of the Gulf Production Company with the view of securing his services in connection with the blocking of lands in Jefferson and Orange counties, and that he entered into an employment agreement with said company, and, in that connection, agreed to block for said company certain lands in the Fannett territory, for which he was to receive a one twenty-fourth overriding royalty from oil and gas and 25 cents per ton for sulphur produced and saved from leases taken by him for said company; that, after his employment, but while negotiations concerning the compensation he was to receive from said Gulf Production Company were pending, he called Dr. A. W. Roark on the phone at Saratoga, Tex., for the purpose of advising him (Roark), Hooks then being out of the state, that he (Bordages) was going to enter the employment of Gulf Production Company, and for that reason would not be available for further employment by plaintiffs and Hooks for the purpose of blocking of any such land projects as he had blocked for them on prior occasions and had attempted to block for them in the Fannett territory; that, at the time he called said Roark for the purpose stated, his employment by plaintiffs and Hooks, as it related to the lands in the Fannett territory, had ceased and determined, and at said time there was no obligation whatever upon his part toward plaintiffs and

Hooks connected therewith or concerning same.

He further answered that, acting under his employment with the Gulf Production Company, he procured leases for it upon lands in the W. H. Smith league and certain other lands in that territory, and spent much time, effort, and considerable money in so doing; that plaintiffs did not in any wise contribute either money or effort to secure said leases, or offer to do so, nor were they recognized or thought of in the situation, and not until many of said leases had been secured and said Gulf Production Company had carried on seismograph operations thereon, and had ascertained the presence of a salt dome which indicated the presence of oil, did the plaintiffs or either of them make any claim to him of any interest in said leases or the compensation agreed to be paid to him for securing same.

He further answered that, prior to the time of the procuring of said leases upon said lands for the Gulf Production Company, and prior to the attempt by him to procure the same for plaintiffs and Hooks, he had been associated with said Hooks in a partnership agreement blocking lands for some of the larger oil companies, and that, in the making of said contract by him with the Gulf Production Company to block the lands in Jefferson and Orange counties, it was contemplated that said Hooks would be associated with him in the blocking of said lands, and that he and Hooks would share equally in all rights, royalties, and compensations to be received from said Gulf Production Company, and that under the terms of said contract the said Hooks and Bordages blocked many thousands of acres of land in said counties for said company, as well as blocking the land upon which the Gulf Production Company had leases in the Fannett territory; that plaintiffs in no manner contributed to the success of his efforts in procuring leases for the Gulf Production Company, or the purchase of fee royalties for other parties named in their petition, and pleaded that, if there were any agreements made with plaintiffs, or any of them, to share in said overriding and fee royalties, which agreements he specially denied, same were without consideration and in violation of the statute of frauds and unenforceable as against him (Bordages).

He further answered that he at all times acted with good faith toward plaintiffs and Hooks in carrying out the terms of his employment by them wherein he was to attempt to secure certain mineral leases for their account in the territory designated by them, and performed every obligation resting on him by reason thereof, and that, had plaintiffs and Hooks, acting through said Hooks, not refused to pay the cash consideration for leases on the Jap lands, and had not failed and refused to proceed with the project as originally agreed upon, except a lease be had on the Jap lands without the payment of a cash consideration, which was impossible, and which said lands were thereafter immediately leased to others, and had the plaintiffs and Hooks put up necessary funds to carry out the drilling obligations required by leases agreed to at the time of plaintiffs' and Hooks' failure and refusal to proceed with the project, he (Bordages) would have continued in his efforts to procure leases in behalf of plaintiffs and Hooks, thereby securing for himself a one-fifth interest in all profits, if any, that might have accrued from the operations of plaintiffs and Hooks had they not failed and refused to proceed further, rather than the one twenty-fourth overriding interest agreed upon with the Gulf Production Company; that it was not until Hooks advised him that he (Hooks) and plaintiffs would have to let the Jap land go, which said lands were an essential part of the project with Hooks and plaintiffs, and without which lands plaintiffs and Hooks would not proceed, did he cease his efforts in behalf of said plaintiffs and Hooks; that, after the abandonment of their project by plaintiffs and Hooks, he (Bordages) was open to other employment, having in view the blocking of lands for development by either plaintiffs and Hooks or other parties; and that, when he was approached by the Gulf Production Company to enter their employ, he was under no legal duty or obligation to plaintiffs and Hooks, but was free to work for said company under such terms as he and said company might agree.

The defendant Hooks answered by general demurrer and general denial.

The defendant Gulf Production Company answered by general demurrer, general denial, and plea of not guilty.

At the conclusion of the evidence, both plaintiffs and defendant Bordages moved for an instructed verdict, both of which were refused.

The case was tried to a jury upon the following special issues:

"Special Issue No. 1: Can you find from the evidence the lands that were to be leased on behalf of plaintiffs and Hooks by J. A. Bordages under his contract with them to lease lands for them in the Fannett territory?"

The jury answered: "Yes."

"Special Issue No. 2: If you have answered Special Issue No. 1 'yes,' then answer Special Issue No. 2:

"What lands, if any, were to be leased by said J. A. Bordages for plaintiffs and Hooks under his contract with them to lease for them lands in the Fannett territory?

"Answer by designating the territory, if any."

The jury answered: "W. H. Smith league and vicinity."

"Special Issue No. 3: Did Charles G. Hooks refuse to J. A. Bordages to go ahead with their drilling project unless a lease on the Jap lands was secured for the syndicate without a cash consideration?"

The jury answered: "Yes."

"Special Issue No. 4: You will find from all the facts and circumstances before you whether or not J. A. Bordages agreed with plaintiffs that he and said partnership composed of plaintiffs and Hooks would surrender all or a part of the block agreed to be leased by said partnership, to the Gulf Production Co., or suspend the leasing or attempting to lease the said territory, and permitting the Gulf to lease therein, by the terms of which agreement the plaintiffs were to have the same respective share in the overriding royalty, that they were to have had in the block originally agreed to have been leased by said partnership."

The jury answered: "He did."

Upon the answers of the jury, judgment was rendered in favor of defendant, J. A. Bordages, that plaintiffs take nothing. Motion for a new trial was overruled, and the case is before us on writ of error by plaintiffs.

Plaintiffs present sixteen propositions based upon fifty-six assignments of error. We shall not discuss them seriatim, but only such as are deemed necessary to the disposition of the case.

 It is believed that the jury's answer to the third special issue is controlling. Plaintiffs, S. Robichaux, J. M. Pickerill, and Dr. A. W. Roark, together with defendant Charles G. Hooks, formed the partnership mentioned throughout the pleadings. Prior to the occurrences involved herein, they had been engaged in prospecting for and endeavoring to develop oil. In the beginning of the matters culminating in the instant suit, the partnership, acting through its member, Charles G. Hooks, employed defendant Bordages to undertake to secure mineral leases in what is known as the Fannett territory in Jefferson county, embracing the W. H. Smith league, the Gill and Jap lands, and other lands surrounding. The leases were sought on a drilling basis. No cash consideration was to be paid for any of the leases, but they were to be obtained purely on a drilling consideration. This was the authority given Bordages. He was, at his own expense, to go upon the ground and seek leases for the partnership upon these terms, he to receive for his compensation one-fifth of whatever profits that might be realized from the leases. Of the partnership, all lived at Saratoga, in Hardin county, except Hooks, who lived at Beaumont, and had his office there. Defendant Bordages also resided at Beau-

mont. Hooks was the active member of the partnership in carrying on the project. It developed that the Gill lands could not be leased for the partnership because same was already under lease to another party. Bordages reported this fact to Hooks. It then developed that the Jap lands—some 1,700 acres—could not be leased on a drilling contract, but that some $4,000 cash was demanded for a lease. This Bordages reported to Hooks. Hooks informed Bordages that they, the partnership—plaintiffs and Hooks —would not pay a cash consideration for a lease upon said lands, and that, if said lands could not be had on a drilling basis, they would have to give up the project, and there would be no wells drilled. Then it became known that the Jap lands could be leased for $2 per acre cash. This Bordages reported to Hooks, of the partnership, who again informed him (Bordages) that they (the partnership) would not pay a cash consideration for a lease upon the Jap lands, or for a lease upon any of the lands originally contemplated, and that, if the Jap lands could be leased only for a cash consideration, they would have to let the project go, and that the project could not be carried out. This, according to the undisputed record, ended the efforts of the partnership to secure leases by Bordages under their contract with him and under the terms upon which they had authorized him to obtain leases. That Hooks did so inform Bordages and refused to go on with the partnership undertaking, the jury found in answer to the third special issue, which reads:

"Special Issue No. 3: Did Charles G. Hooks refuse to J. A. Bordages to go ahead with their drilling project unless a lease on the Jap lands was secured for the syndicate without a cash consideration?" which the jury answered "Yes." This act of the partnership, acting by and through its member Hooks, refusing to go further in carrying out their contemplated project, terminated their leasing contract with Bordages. No leases had been obtained, though some had been promised. No effort or attempt to drill was ever made on any of the lands upon which leasing on a drilling basis had been optioned. No money had been advanced or paid in any form by plaintiffs as expenses in forwarding the enterprise. As we understand plaintiffs' pleadings and the record, their contention is that their whole cause of action arose out of and in the contract entered into between the partnership, plaintiffs and Hooks, and the defendant Bordages, and that said contract continued to exist up to and was in effect at the time Bordages took leases in behalf of the Gulf Production Company. If this contention were true, they would be entitled to recover, because the principle of law relied upon by plaintiffs in the filing of their suit that an agent is not permitted to deal with

the matter of his agency for and on his own account is well settled. But it is also elementary that this rule has no application if the agency has been terminated.

But it is insisted by plaintiffs that Hooks had no authority to terminate the project or undertaking of the partnership, and as they (plaintiffs) were not consulted by Bordages relative to going further with their proposed development project, they were not bound by his (Hooks') statement to Bordages refusing to carry on with their proposed undertaking, and Bordages was not released from his obligations to them. This contention must be overruled. The fact of the existence of the partnership, composed of plaintiffs and Hooks, is not questioned, but insisted on by plaintiffs. That Hooks was the active member in employing and consulting with Bordages relative to the partnership undertaking is without dispute. Likewise, Hooks' refusal to go further with the partnership project, and telling Bordages it was abandoned, is fully shown by the record. Between partners themselves, and between the firm and persons dealing with it, it must be presumed that each partner is the agent of the firm, empowered to carry out its objects and to transact the business for which the partnership was formed in the usual way in which such business is conducted. As to third parties, each partner is, by implication of law resulting from the partnership relation, the agent of every other partner with respect to the concerns of the partnership. He acts as principal for himself and as agent for his partners, and his acts are binding upon all. 20 R. C. L. p. 882, § 94; 47 C. J. 826, §§ 289 and 290; Randall v. Merideth, 76 Tex. 682, 13 S. W. 576; Craig v. Dunlap (Tex. Civ. App.) 267 S. W. 1007, 1009; McFaddin Land Co. v. Texas Rice Land Co. (Tex. Civ. App.) 253 S. W. 916. While it is true that partners may restrict their powers as agents of the firm by special agreements among themselves, such was not the case here, and plaintiffs in their brief accord to their partner Hooks full confidence and acquit him of any fraudulent act. So, as we have before stated, Hooks' refusal to go further in the carrying out of the partnership project, and informing the defendant Bordages that the project was abandoned, terminated the agency of Bordages for the partnership, and, upon the termination of such agency, his authority as such ceased together with his responsibility. What we have said disposes of plaintiffs' fifth, sixth, seventh, eighth, eleventh, twelfth, and thirteenth propositions.

Plaintiffs complain that the court erred in refusing to render judgment in their favor and in rendering judgment non obstante veredicto in favor of defendant. This proposition is based upon the jury's answer to special issue No. 4. It reads: "You will find from all the facts and circumstances before you whether or not J. A. Bordages agreed with plaintiffs that he and said partnership composed of plaintiffs and Hooks, would surrender all or a part of the block agreed to be leased by said partnership, to the Gulf Production Company, or suspend the leasing or attempting to lease the said territory, and permitting the Gulf to lease therein, by the terms of which agreement the plaintiffs were to have the same respective shares in the overriding royalty that they were to have had in the block originally agreed to have been leased by said partnership."

The jury answered that Bordages did so agree. On this finding plaintiffs insist they were entitled to have judgment, and that the court's judgment in favor of defendant was a judgment non obstante veredicto, and erroneous.

This assignment should be overruled for the following reasons:

(a) The jury's answer to special issue No. 3 finding, in effect, that the partnership refused to carry out the original agreement between the partnership and Bordages, rendered the finding in answer to special issue No. 4, supra, immaterial. The partnership having abandoned the leasing undertaking upon which its contract with defendant Bordages was founded, his agency ceased, and his connection with, and obligations to, the partnership determined. While at the time the instant judgment was rendered judgment non obstante veredicto could not be rendered in this state, under the undisputed facts it is not believed that the judgment for defendant was one non obstante veredicto, for it was even then well settled that answers of the jury to special issues on immaterial questions should be disregarded by the court as surplusage and not considered in rendering judgment. Brokaw v. Collett (Tex. Com. App.) 1 S.W.(2d) 1090; McGee v. Cage (Tex. Civ. App.) 283 S. W. 283.

(b) It is not believed that special issue No. 4 has basis in the pleadings, and hence the finding would not support a judgment. Johnson v. Breckenridge-Stephens Title Co. (Tex. Com. App.) 257 S. W. 223. Plaintiffs' pleadings are to the effect that, after defendant Bordages had been employed by the partnership to obtain leases for it, and while he was endeavoring to get said leases, and while his contract of employment with the partnership was in effect, he agreed with the partnership, plaintiffs and Hooks, to turn the existing leases, and such leases as in the future he might secure, over to the Gulf Production Company, under the terms of which plaintiffs and Hooks would share with him in the same manner as they were to share in the block originally agreed to be leased by the partnership. The evidence of plaintiffs was that Bordages so

agreed with plaintiffs. There was no evidence that Bordages made such agreement with plaintiffs and Hooks as charged. The evidence did not show that Hooks was in any manner concerned in or with the agreement testified to by plaintiffs. The jury found, in answer to special issue No. 4, that the agreement was between plaintiffs and Bordages, which did not support the allegation that said agreement was between the partnership, plaintiffs and Hooks, and Bordages. Plaintiffs could not recover upon a contract alleged to have been between the partnership, plaintiffs and Hooks, and Bordages, when the proof and jury finding are that, if there was an agreement, it was between plaintiffs, Robichaux, Roark, and Pickerill, and Bordages, a different contract or agreement from the one alleged. It is elementary that one suing on a contract must recover on the contract alleged, or not at all. Morris v. Kasling, 79 Tex. 141, 15 S. W. 226, 11 L. R. A. 398. For the reason discussed, the finding in answer to special issue No. 4 was immaterial. But, if said special issue No. 4 has a basis in the pleading, then the agreement of defendant Bordages to share with plaintiffs the overriding royalties derived from leases taken by him under his contract with the Gulf Production Company was without consideration, and therefore not binding. Bordages' agency with the plaintiffs had ceased. No leases were taken by Bordages for the partnership. No money had been spent by plaintiffs, or either of them, in aiding Bordages in his efforts to get such leases. There were no partnership assets of any nature whatsoever that Bordages could turn over to the Gulf Production Company. It is not alleged by plaintiffs that they gave any money or effort to the obtaining of any lease by themselves or Bordages to be turned over to said company, or that they invested anything or promised to contribute anything to the getting of any of such leases. The promise of Bordages, therefore, was wholly without consideration and unenforceable. That being so, the finding of the jury in answer to special issue No. 4 was not material to the rendition of a judgment.

■ (c) If it be that the finding of the jury in answer to special issue No. 4 has basis in the pleading, then the alleged contract, viewed in the light of the jury's answer to special issue No. 3, was in violation of the statute of frauds. Plaintiffs seek to recover certain overriding royalties and fee royalties and interests in lands held by Bordages under and by virtue of his contract with the Gulf Production Company and parties he represented, for an interest in the purchase, of fee royalties and lands. The proof showed that Bordages' interest, a portion of which plaintiffs sought to recover, consisted of overridding royalties, fee royalties, and other interests in land. These holdings of

Bordages constituted an interest or estate in lands. Hager v. Stakes, 116 Tex. 453, 294 S. W. 835; Taylor v. Higgins Oil & Fuel Co, (Tex. Civ. App.) 2 S.W. (2d) 288. If the contract alleged by plaintiffs that Bordages would convey to them the interests and royalties alleged existed, it was not in writing, but was wholly oral, and so was in violation of the statute of frauds and unenforceable. Articles 1288 and 3995, R. S. 1925; Taylor v. Higgins Oil & Fuel Co. (Tex. Civ. App.) 2 S.W.(2d) 288; Waggoner v. Herring-Showers Lumber Co. (Tex. Sup.) 40 S.W.(2d) 1; Lassiter v. Bouche (Tex. Civ. App.) 5 S.W.(2d) 831, 833; Foster v. Ross, 33 Tex. Civ. App. 615, 77 S. W. 990.

All of plaintiffs' assignments have been considered, and none of them show error; therefore the judgment should be affirmed, and it is so ordered.

Affirmed.

## On Motion for Additional Findings of Fact.

Plaintiffs in error have filed a motion for additional findings of fact. They say:

"Plaintiffs in error respectfully request the Court to make the following additional findings of fact:

"(a) The Court finds that the plaintiffs offered evidence raising an issue of fact upon each of the allegations in their petition, as set forth in this opinion.

"(b) The evidence raised an issue of fact as to there being a consideration for the contract of Bordages to secure royalties as said contract was found in answer to the fourth special issue.

"(c) The evidence raised an issue of fact as to Hooks' authority to act for the partnership in attempting to release Bordages.

"(d) The evidence raised an issue of fact upon the question of whether Hooks was purporting to act for himself alone or for the partnership in dealing with Bordages relative to Hooks withdrawing for failure to get the Jap land.

"(e) The evidence raised an issue of fact to go to the jury, upon the issues raised by the allegations of the petition, charging Bordages with bad faith towards the plaintiffs.

"(f) That the evidence raised an issue of fact to go to the jury upon the question of the bad faith of Hooks and Bordages towards the plaintiffs."

We are not requested to find any specific fact or facts, but the matters requested are conclusions of law to be drawn from facts supposed to be in evidence. Moreover, in our original opinion, we discussed the most, if not all, of the matters embodied in the request above, and in doing so stated the facts relative to the respective issues.

The motion is overruled.